## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NELSON JOSE DEL ROSARIO,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No. 08-0079 JDB** |
| **DRUG ENFORCEMENT ADMINISTRATION,** | ) |
| *et al.* | ) |
| **Defendants** | ) |
| | ) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants, through counsel, the United States Attorney for the District of Columbia, respectfully move for summary judgment pursuant to Fed R. Civ. P. 56. No genuine issue of material fact exists, and Defendants are entitled to judgment as a matter of law. In support hereof, Defendants respectfully refer the Court to the attached memorandum of points and authorities, statement of material facts not in genuine dispute, attachments, and proposed order.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____/s/_____
ALEXANDER D. SHOAIBI, DC Bar # 423587
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendants

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NELSON JOSE DEL ROSARIO,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | |
| ) | **Civil Action No. 08-0079 JDB** |
| **DRUG ENFORCEMENT ADMINISTRATION,** ) | |
| *et al.* ) | |
| **Defendants** ) | |
| ) | |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

The Defendants, the Drug Enforcement Administration (DEA), Office of Information and

Privacy (OIP), and Executive Office of U.S. Attorneys (EOUSA), respectfully submit this

memorandum of points and authorities in support of their motion for summary judgment.[1]

---

[1] The remaining Defendants, OIP and EOUSA are not discussed further because it is undisputed that they neither searched for nor produced documents nor claimed exemptions. Even though he has named them as Defendants, Plaintiff has not challenged their actions. OIP's role was confined solely to ruling on Plaintiff's appeal of DEA's Glomar-type response concerning records related to Agent Laboy. See Compl. at ¶ 10;Seidel Dec. at ¶ 11 & Exhibit M (OIP's affirmance of DEA's Glomar response). In response to Plaintiff's FOIA request, EOUSA informed Plaintiff that he should contact the Freedom of Information Operations Unit, Drug Enforcement Administration Department of Justice because EOUSA did not maintain the records that he was seeking. Complaint ¶ 6 & Letter (attached to Complaint) from William G. Stewart, Assistant Director of EOUSA to Plaintiff, dated April 30, 2007 (hereinafter "April 30, 2007 letter"). Plaintiff did not appeal EOUSA's response and so he failed to exhaust any claim that he might have against EOUSA. Browder v. Fairchild, No. 3:08CV-P15-H, 2008 U.S. Dist. LEXIS 35603, at  (W.D. Ky. Apr. 30, 2008) at *3 (dismissing lawsuit where the plaintiff failed to exhaust his administrative remedies by not filing an administrative appeal of the defendant's initial responses to his requests); Citizens for Responsibility and Ethics in Washington v. Dep't. of Interior, 503 F.Supp.2d 88, 101 (D.D.C. 2007) ("Because the plaintiff failed to exhaust all administrative remedies by filing late administrative appeals, or in some instances, by declining to appeal at all, and in light of the fact that the plaintiff has the opportunity to file another FOIA request to obtain the information they are seeking, a balancing of the interests does not weigh in the plaintiff's favor.").

## I. Background

This case arises under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and concerns the Plaintiff's separate FOIA request to the DEA. Compl. at p. 1. Plaintiff is a federal prisoner who is currently housed at Moshannon Valley Correctional Center in Philipsburg, Pennsylvania. Compl., Case Caption. His request sought records concerning his July 29, 2000 arrest and a subsequent suppression hearing where Plaintiff averred that "DEA supervisor ELVIN LABOY" testified. See Attachment 1 (Declaration of Michael G. Seidel ("Seidel Dec") (DEA)) at ¶ 5 & Exhibit A[2]. Specifically, Plaintiff asked for the following four items: "(1) copies of police computerized [sic] and of daily logs; (2) The substance of any oral statements which the agent Laboy alleged that was made by me, whether before or after the indictment in response to an interrogation by any person then known to be a government agent; (3) The names, assignments and locations of the agents and/or officers present at time of any oral statement referred to in request no.2 was made; and (4) copies of police computerized [sic] and of daily logs, showing that agent Laboy was in fact present at the international Airport "Luis Munoz Marin" in San Juan, Puerto Rico on July 29, 2000." Id.

As of this date, the DEA has processed a total of 83 pages responsive to Plaintiff's requests, released 1 page in full and 30 pages in part and has withheld 52 pages in full. Seidel Dec. ¶ 25; ¶¶ 26-37 (contains a description of these responsive materials). These 31 released pages include, portions of 30 pages (29 pages from file number G5-00-0192 and one (1) page from G5-01-0015) and one (1) page released in its entirety (file number G5-00-0192). Id. The remaining 52 pages were withheld in their entirety. Id. 51 of those pages are from file number G5-00-0192 and one (1) page is from file number G5-01-0015. Id. Information is withheld pursuant to FOIA Exemptions (b)(2),

---

[2] Exhibits A through S are attached to the Seidel Declaration (Attachment 1).

(b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(F), and PA exemption (j)(2). Id. Plaintiff was also informed that a privacy waiver was required from Special Agent (SA) Laboy before DEA would confirm or deny the existence of any "personal information" about the agent in its files. Seidel Dec. at ¶ 10 & Exhibit J (DEA Freedom of Information Operations Unit[3] (DEA-SARO's) letter to Plaintiff, dated January 13, 2006). The letter further informed Plaintiff of his right to appeal to the Department of Justice Office of Information and Privacy (DOJ-OIP). Id.

Plaintiff appealed to DOJ-OIP by letter dated February 1, 2006 and limited his appeal to the Glomar-type response concerning any records related to SA Laboy (see Seidel Dec., Exhibit K) which DOJ-OIP acknowledged on February 17, 2006 (see Seidel Dec., Exhibit L). Seidel Dec. at ¶ 11. By letter dated February 17, 2007, DOJ-OIP affirmed DEA-SARO's action of refusing to confirm or deny the existence of records about SA Laboy in its files. Id. at Exhibit M.

On April 30, 2007, the Executive Office of U.S. Attorneys acknowledged Plaintiff's request and assigned it a number of 07-1278. Complaint ¶ 6 & Letter (attached to Complaint) from William G. Stewart, Assistant Director of EOUSA to Plaintiff, dated April 30, 2007 (hereinafter "April 30, 2007 letter"). EOUSA informed Plaintiff that he should contact the Freedom of Information Operations Unit, Drug Enforcement Administration Department of Justice. Id. ( April 30, 2007 letter states "You requested information which is not information maintained by the EOUSA or by the individual United States Attorney's Offices, but is maintained by the Drug Enforcement Administration (DEA)."). EOUSA also informed Plaintiff of his right to appeal this decision within 60 days from April 30, 2008. See April 30, 2007. Plaintiff did not file an appeal.

---

[3] DEA Freedom of Information Operations Unit (SARO) is the DEA office responsible for responding to, the search for, and the processing and release of information requested under FOIA and PA. Seidel Dec. ¶ 3.

As set forth in detail in the accompanying Statement of Material Facts and agency declarations, Defendants have fully and appropriately responded to Plaintiff's FOIA request, producing to him all reasonably segregable, non-exempt information. Defendants therefore have satisfied their obligations under FOIA, and are entitled to summary judgment.

## II. Legal Standards

### A.    Standard for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the Plaintiff must present some objective evidence that would enable the court to find he is entitled to relief. In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

In Anderson the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.[4] See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure. Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the

---

[4] For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).

documents are exempt from disclosure. <u>Hayden v. National Security Agency Cent. Sec. Serv.</u>, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), <u>cert. denied</u>, 446 U.S. 937 (1980); <u>Church of Scientology v. U.S. Dept. of Army</u>, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" <u>Trans Union LLC v. Federal Trade Commission</u>, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (<u>quoting Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981)); <u>see also</u> <u>Public Citizen, Inc. v. Dept. of State</u>, 100 F. Supp. 2d 10, 16 (D.D.C. 2000); <u>McGhee v. Central Intelligence Agency</u>, 697 F.2d 1095, 1102 (D.C. Cir. 1983); <u>Citizens Commission on Human Rights v. FDA</u>, 45 F.3d 1325, 1329 (9th Cir. 1995); <u>Bowen v. FDA</u>, 925 F.2d 1224, 1227 (9th Cir. 1991). When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and when the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. <u>Perry v. Block</u>, 684 F.2d 121 (D.C. Cir. 1982).

**B.    Standards for a Proper Search for Responsive Records**

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records. <u>Oglesby v. U.S. Dept. of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990); <u>Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al.</u>, 844 F. Supp. 770, 776 (D.D.C. 1993); <u>Weisberg v. U.S. Dept. of Justice</u>, 705 F.2d 1344, 1352 (D.C. Cir. 1983). This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce relevant material. <u>Id</u>. at 777 n.4. An agency is not required to

search every record system, but need only search those systems in which it believes responsive records are likely to be located.  Oglesby, 920 F.2d at 68; Citizens for Responsibility and Ethics in Washington v. DOJ, 535 F.Supp.2d 157, 160 (D.D.C. 2008) ( finding search to be adequate where DOJ identified the files searched and established that these were the locations most likely to contain responsive records).   Simply stated, the adequacy of  the search is "dependent upon the circumstances of the case."  Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990).

The search standards under FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  It has been held that "'the search need only be reasonable; it does not have to be exhaustive.'"  Miller v. Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985) citing National Cable Television Association v. FCC, 479 F.2d 183, 186 (D.C. Cir. 1973).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  Nation Magazine, 71 F.3d at 892 n.7.  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it.  Maynard v. CIA, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby, 920 F.2d at 68; see SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith."  Miller, 779 F.2d at 1383; Goland, 607 F.2d at 352; see also West v.

Jackson, Civ. Action No. 07-727(RMC), 2008 WL 624035, at *20 (D.D.C. Mar. 10, 2008) (HUD's affidavits "indicat[e] that it in good faith conducted a reasonable and adequate search."). Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" Carney v. Dept. of Justice, 19 F.3d 807, 812 (2d Cir. 1994), cert. denied, 513 U.S. 823 (1994) (quoting SafeCard Servs., 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search. See Banks v. Department of Justice, 538 F.Supp.2d 228, 238 (D.D.C. 2008) (A declaration, which states that a "responsible person" searched for responsive records in two field offices, is insufficient to show that the search was adequate, because it in no way "describes the means by which these 'responsible persons' conducted the search or searches, nor adequately explains the systems of records or places searched.").

Once the agency has met this burden through a show of convincing evidence, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. Miller, 779 F.2d at 1383. A requester may not rebut agency affidavits with purely speculative allegations. See Carney, 19 F.3d at 813; SafeCard, 926 F.2d at 1200; Maynard v. CIA, 986 F.2d 547, 559-560 (1st Cir. 1993).

The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

### C.    Standards for A Proper Vaughn Index

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for their withholding of responsive documents. "In response to this special aspect of summary judgment

in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs." Judicial Watch v. U.S. Dept. of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). These declarations or affidavits (singly or collectively) are often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S. C. 1564 (1974). There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. FCC, 976 F. Supp. 23, 35 (D.D.C. 1997). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. U.S. Dept. of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d Cir. 1988).[5]

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. See Citizens Commission on Human Rights v. FDA, 45 F.3d 1325, 1326 (9th Cir. 1995). "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the

---

[5] "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Id. "The degree of specificity of itemization, justification, and correlation required in a particular case will, however, depend on the nature of the document at issue and the particular exemption asserted." Information Acquisition Corp. v. Dept. of Justice, 444 F. Supp. 458, 462 (D.D.C. 1978).

material is actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

     **D.**     **Legal Standards for Applicable Exemptions to Release under FOIA.**

     **1.**     **Privacy Act Exemption (j)(2)**

As stated by the Court in <u>Dorsett v. U.S. Dept. of Treasury</u>, 307 F.Supp.2d 28 (D.D.C. 2004), "[e]xemption (j)(2) exempts from disclosure 'any system of records within the agency,' as long as the agency that maintains the system of records 'performs as its principal function any activity pertaining to the enforcement of criminal laws....' 5 U.S.C. § 552a(j)(2)." <u>Id</u>. at 35.

     **2.**     **Exemption 2**

Title 5, United States Code, Section 552 (b)(2) ("Exemption 2") exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The information need not be actual rules or practices; agencies can invoke Exemption 2 for matters related to rules and practices as well. <u>Larson v. Department of State</u>, 2005 WL 3276303, 14 (D.D.C. 2005). Exemption 2 envelops two discrete categories of information. <u>Moayedi v. Customs and Border Protection</u>, 510 F.Supp 2d 73 84-85, (D.D.C.2007). They include (a) internal matters of a relatively trivial nature (sometimes referred to as "low 2" information); and (b) more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement (sometimes referred to as "high 2" information). <u>Id.</u>; <u>see</u> <u>also</u> <u>Dept. of Air Force v. Rose</u>, 425 U.S. 352, 369-70 (1976); <u>Sussman v. U.S. Marshals Service</u>, 494 F.3d 1106, 1112 (D.C. Cir. 2007); <u>National Treasury Employees Union v. U.S. Customs Service</u>, 802 F.2d 525, 528-30 (D.C. Cir. 1986); <u>Crooker v. Bureau of Alcohol, Tobacco and Firearms</u>, 670 F.2d 1051, 1073-74

(D.C. Cir. 1981). Depending upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category."

"Low (b)(2)" information refers to internal procedures and practices of an agency the disclosure of which would constitute an administrative burden unjustified by any genuine and significant public benefit. Martin v. Lauer, 686 F.2d 24, 34 (D.C. Cir. 1982). "Low b(2)" information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. See Schwaner v. Dept. of the Air Force, 898 F.2d 793, 795 (D.C. Cir. 1990). Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and similar administrative markings are exempt from disclosure. The reason is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest. Martin v. Lauer, 686 F.2d at 34.

The "high (b)(2)" exemption excepts from mandatory disclosure documents relating to more substantive internal matters. See Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Withholding is permitted in this category to the extent that disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, id., would disclose guidelines for law enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities. See Crooker, 670 F.2d 1051 (D.C. Cir. 1981) (en banc); Hardy v. AT, 631 F.2d 653, 656 (9th Cir. 1980).

Deference has been accorded to law enforcement matters under Exemption 2. Courts have interpreted this exemption to apply to a wide range of information, including general guidelines for conducting investigations (see PHE, Inc. v. Dept. of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993));

11

guidelines for conducting post-investigation litigation (<u>Schiller v. NLRB</u>, 964 F.2d at 1207)); a training manual with information pertaining to surveillance techniques (<u>Crooker</u>, 670 F.2d at 1073); criteria for prison gang-member classification (<u>Jimenez v. FBI</u>, 938 F. Supp. 21, 27 (D.D.C. 1996)); and DEA's drug-violator codes (<u>Albuquerque Publishing Co. v. Department of Justice</u>, 726 F. Supp. 851, 854 (D.D.C. 1989).

### 3.     Exemption 6

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  In a definitive opinion on the meaning of the term "similar files," the Supreme Court held that exemption (b)(6) "` [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual.'" <u>Judicial Watch Inc. V. Dept of Commerce</u>, 337 F.Supp 2d 146, 176 (D.D.C. 2004) (citing <u>Department of State v. Washington Post Co.</u>, 456 U.S 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin. News 2428)); <u>New York Times Co. v. NASA,</u> 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc).  The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." <u>U.S. Department of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749, 763 (1989).

Once it is established that the withheld information meets the threshold requirement of exemption (b)(6), a determination must then be made as to whether disclosure would constitute a "clearly unwarranted invasion of personal privacy." This requires balancing of the individual interest in privacy against public interest in disclosure.  <u>See</u> <u>Billington v Dept of Justice</u>, 245 F.Supp 2d 79,

85 (D.D.C. 2003); Lepelletier v. F.D.I.C., 164 F.3d 37, 46 (D.C. Cir. 1999); Department of Justice

v. Reporters Comm. for Freedom of the Press, 489 U.S. 749 (1989) (Reporters Committee);

Department of the Air Force v. Rose, 425 U.S. 352, 372 (1976).  In determining how to balance the

private and public interests involved, the Supreme Court has sharply limited the notion of "public

interest" under the FOIA:  "[T]he only relevant public interest in the FOIA balancing analysis [is]

the extent to which disclosure of the information sought would 'she[d] light on an agency's

performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"

Lepelletier, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks

omitted), quoting United States Dept. of Defense v. FLRA, 510 U.S. 487, 497 (1994).  See also

Reporters Committee, 489 U.S. at 773.   Information that does not directly reveal the operation or

activities of the federal government "falls outside the ambit of the public interest that the FOIA was

enacted to serve." Id. at 775; see also, Hall v. DOJ, No. 06-01540, 2008 WL 2042500, at *5 (D.D.C.

May 14, 2008) (noting that "[p]laintiffs do not demonstrate how release of the redacted information

will benefit anyone but themselves."  Therefore, "there is no public interest to balance against the

witnesses' privacy interests.").  Further, "something, even a modest privacy interest, outweighs

nothing every time." National Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C.

Cir. 1989); but see Lepelletier, 164 F.3d at 48 (in extraordinary circumstance where the individuals

whose privacy the government seeks to protect have a "clear interest" in release of the requested

information, the balancing under Exemption 6 must include consideration of that interest).

### 4.    Exemption 7--Threshold Issue

Application of any of FOIA's exemptions in Exemption 7 requires the agency to satisfy the

threshold issues of, first, whether the agency has the requisite law enforcement purpose in compiling

the records at issue and, second, whether the information gathered has a sufficient nexus to the law enforcement purpose. See, e.g., Banks v. DOJ, No. 06-1950, WL 701211 (D.D.C. Mar. 16, 2008) at * 9 ("In assessing whether records are compiled for law enforcement purposes, the focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding) (internal citations and quotations omitted); see also Tax Analysts v. IRS, 294 F.3d 71, 76-79 (D.C. Cir. 2002); Jefferson v. DOJ, 284 F.3d 172, 176-77 (D.C. Cir. 2002); Campbell v. DOJ, 164 F.3d 20, 32 (D.C. Cir. 1998); Pratt v. Webster, 673 F.2d 408, 419 (D.C. Cir. 1982).

In Jefferson, the court drew a distinction between agencies gathering information as part of any government agency's "oversight of the performance of duties by its employees," and information sought as part of investigations into illegal conduct for which the agency might impose criminal or civil sanctions. 284 F.3d at 177. Thus, Jefferson sets forth a broadly applicable distinction based more on the agency's mission and reasons for collecting the information at issue.

Many types of agency activities have been upheld as having law enforcement purpose, even several that arguably go beyond the core law enforcement mission of investigating crimes that have been committed. See, e.g., Mittleman v. OPM, 76 F.3d 1240, 1241-43 (D.C. Cir. 1996) (OPM background investigation), cert. denied, 519 U.S. 1123 (1997); Heggestad v. DOJ, 182 F. Supp. 2d 1, 13 (D.D.C. 2000) (Hogan, J.) (IRS has law enforcement purpose); Center to Prevent Handgun Violence v. Dep't of Treasury, 981 F. Supp. 20 (D.D.C. 1997) (Robertson, J.) (collecting information on all repeat handgun sales); Doe v. DOJ, 790 F. Supp. 17, 20-21 (D.D.C. 1992) (background investigations).

14

In addition, the caselaw in this Circuit is unambiguous that the agency need not tie its collection of information to any specific or ongoing investigation.  See Tax Analysts, 294 F.3d at 78; Keys 830 F.2d at 342.  This precept is fully consistent with the courts' broad acceptance of the view that the 1986 amendments to the FOIA relaxed the required threshold showing for Exemption 7.  See, e.g., United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 780 (1989) (recognizing that the shift from "would constitute" standard to "could reasonably be expected to constitute" standard represents a congressional effort to ease considerably the burden of invoking Exemption 7); S. Rep. No. 221, 98th Cong., 1st Sess. 25 (1983) ("Substitute 'records or information' for 'investigatory records' as the threshold qualification for the exemption: This amendment would broaden the scope of the Exemption to include 'records or information compiled for law enforcement purposes,' regardless of whether they may be investigatory or noninvestigatory."); Hopkinson v. Shillinger, 866 F.2d 1185, 1222 n.27 (10th Cir. 1989) ("The 1986 amendment[s] broadened the scope of exemption 7's threshold requirement.").

### a.    Exemption 7(A)

Exemption 7(A) authorizes agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552 (b)(7)(A).  In defending an Exemption 7(A) withholding, the agency must show that (1) a law enforcement proceeding is pending, or reasonably regarded as prospective, see Long v. U.S. Dep't of Justice, No. 00-0211, 2006 WL 2578755, at *26 (D.D.C. Sept. 8, 2006); Manna v. United States Dep't of Justice, 51 F.3d 1158, 1164 (3rd Cir. 1995), or as preventative, see, e.g., Moorefield. v. United States Secret Serv., 611 F.2d 1021, 1026 (5th Cir. 1980), and (2) that the release of the

15

information could reasonably be expected to cause some articulable harm.  Scheer v. U.S. Dep't of Justice, 35 F. Supp. 2d 9, 13 (D.D.C. 1999) (stating that agency "must first prove" existence of law enforcement proceeding and "must next prove" harm), appeal dismissed per stipulation, No. 99-5317 (D.C. Cir. Nov. 2, 2000); Manna, 51 F.3d at 1164.  An articulable harm occurs "whenever the government's case in court . . . would be harmed by the premature release of evidence or information," Nat'l Labor Relations Board v. Robbins Tire & Rubber Co., 437 U.S. 214, 232 (1978), or when disclosure would impede any necessary investigation prior to the enforcement proceeding.  See  Dickerson v. U.S. Dep't of Justice, 992 F.2d 1426, 1429 (6th Cir. 1993); see also North v. Walsh, 881 F.2d 1088, 1100 (D.C. Cir. 1989) (stating that the standard is "whether disclosure can reasonably be expected to interfere in a palpable, particular way" with enforcement proceedings).

Once the first threshold requirement is satisfied, the agency must establish that the release would result in an articulable harm.  See Judicial Watch v. FBI, No. 00-745, 2001 U.S. Dist. LEXIS 25732, at *14 (D.D.C. Apr. 20, 2001) ("Once the agency establishes that an enforcement proceeding is pending, the agency must show that release of the withheld documents is likely to cause some distinct harm.")  To satisfy this burden, the agency must provide at least a general description of the types of documents at issue sufficient to indicate the type of interference threatening the law enforcement proceeding.  See Jefferson v. Reno, No. 96-1284, 1997 U.S. Dist. LEXIS 3064, at *10 (D.D.C. Mar. 17, 1997) (ruling that neither agency's declaration nor its checklist "describes how the release of any or all responsive documents could reasonably be expected to interfere with these enforcement proceedings"); Curran v. U.S. Dep't of Justice, 813 F.2d 473, 475 (1st Cir. 1987); Spannaus v. U.S. Dep't of Justice, 813 F.2d 1285, 1287 (4th Cir. 1987) (holding that a categorical

16

description of the withheld material is sufficient because any further details "would lead to disclosure of the very information sought to be protected").

### b. Exemption 7(C)

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). See Robinson v. Attorney Gen. of the United States, No. 06-2050, 2008 WL 391244 (D.D.C. Feb. 14, 2008). This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice, 816 F.2d 730, 780 (D.C. Cir. 1987), modified on other grounds, 831 F.2d 1124 (D.C. Cir. 1987), rev'd on other grounds, 489 U.S. 749 (1989); Computer Prof'ls for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996). Indeed, an agency in a FOIA case may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Comm. for Freedom of the Press, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

The names of law enforcement officers who work on criminal investigations have also traditionally been protected against release under Exemption 7 (C). Davis v. U.S. Dept. of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980). Similarly, individuals who provide information to law enforcement authorities, like law enforcement personnel themselves, have privacy interests in their anonymity that is subject to

17

protection. <u>Keys v. Dep't of Homeland Sec.</u>, 510 F.Supp.2d 121, 128 (D.D.C.2007)(concluding that personal information about law enforcement personnel is protected under Exemption 7(C)); <u>Banks</u>, 538 F.Supp.2d at 240 (upholding the application of Exemption 7(C) where the agency's declaration stated "that '[p]rotecting law enforcement officers and other government employees' identities ... promot [es] the efficient performance of official duties' by protecting these persons from 'unnecessary public attention, harassment, annoyance or danger'); <u>Computer Prof'ls for Social Responsibility</u>, 72 F.3d at 904; <u>Farese v. U.S. Dept. of Justice</u>, 683 F. Supp. 273, 275 (D.D.C. 1987). The fact that the requester might be able to ascertain the individuals' identities through other means, or that their identities have been disclosed elsewhere, does not diminish their privacy interests. <u>Fitzgibbon v. CIA</u>, 911 F.2d 755 (D.C. Cir. 1990); <u>Weisberg v. Dept. of Justice</u>, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

Once a privacy interest has been established, as here, it must be balanced against the public interest, if there is any, that would be served by disclosure. <u>See Banks</u>, 2008 WL 701211, at * 9; <u>Albuquerque Publ'g Co. v. Dept. of Justice</u>, 726 F. Supp. 851, 855 (D.D.C. 1989). The public interest in disclosure is limited to the FOIA's "core purpose" of shed[ding] light on an agency's performance of its statutory duties." <u>Reporters Comm. for Freedom of the Press</u>, 489 U.S. at 773. This standard is not easily satisfied when law enforcement information pertaining to individuals is sought, for there "is no reasonably conceivable way in which the release of one individual's name . . . would allow citizens to know 'what their government is up to.'" <u>Fitzgibbon v. CIA</u>, 911 F.2d 755, 768 (D.C. Cir. 1990). <u>See also Albuquerque Publ'g Co.</u>, 726 F. Supp. at 855-56 (no public interest in disclosure of sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation).

18

Furthermore, the requester must not only demonstrate the existence of the public interest but also that the public interest is both significant and compelling, in order to overcome legitimate privacy interests.  Senate of Puerto Rico v. Dept. of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

### c.    Exemption 7(D)

Title 5, United States Code,  § 552  (hereinafter Exemption 7(D)), exempts from disclosure material that:

> could reasonably be expected to disclose the identity of a confidential source including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

Exemption 7(D) recognizes that information furnished by third parties cooperating with federal, state, or local law enforcement investigations is, by its very nature, confidential.  Significantly, the statute affords protection from disclosure to all the information furnished by third-party sources, as well as the actual identity of the cooperating individual, if there has been an explicit assurance of confidentiality, or circumstances exist from which such an assurance could reasonably be inferred. U.S. Dept. of Justice v. Landano, 508 U.S. 165 (1993).

This exemption recognizes the distinct likelihood that the identity of a source may often be determined from an analysis of the information furnished by the source himself.  Indeed, this becomes more inevitable when the analysis is conducted by a person familiar with the facts and circumstances on which the investigation was predicated.  Thus, to disclose the identity of a cooperating individual under such circumstances could result in more than an unwarranted invasion

19

of his privacy; it could breach the confidentiality under which the individual cooperated.

The Landano Court acknowledged that "[t]here may . . . be . . . generic circumstances in which an implied assurance of confidentiality fairly can be inferred." Landano, 508 U.S. at 181. The Court should take into consideration the informant's relation to the crime and the character of the crime for which information has been provided in determining implied grants of confidentiality. Since Landano, courts have identified various crimes which warrant an implied assurance of confidentiality. In Mays v. Drug Enforcement Administration, 234 F.3d 1324 (D.C. Cir. 2000), the Court of Appeals for this Circuit held that the crime of trafficking in cocaine is inherently so dangerous that individuals supplying information about such crimes generally should be entitled to an implied grant of confidentiality.

### d. Exemption 7(F)

Title 5, United States Code, Section 552 (b)(7)(F) (hereinafter "Exemption 7(F)") protects from mandatory disclosure information compiled for law enforcement purposes if disclosure could reasonably be expected to endanger the life or physical safety of any individual. 5 U.S.C. § 552(b)(7)(F). Courts have consistently upheld the application of this exemption to protect information identifying law enforcement officers and special agents, who are especially likely to be in contact with violent suspects. Maroscia v. Levi, 569 F.2d 1000, 1002 (7th Cir. 1977); Albuquerque Publ'g Co., 726 F. Supp. 851, 858 (D.D.C. 1989); Docal v. Bennsinger, 543 F. Supp. 38, 48 (M.D. Pa. 1981); Nunez v. DEA, 497 F. Supp. 209, 212 (S.D.N.Y. 1980). Although this exemption applies to information that is also subject to the protection of Exemption 7(C), supra, there is no balancing required for the use of Exemption 7(F). In any event, it is difficult to imagine any public interest that could outweigh the safety of an individual.

20

E.    Segregability

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  The FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements."  Mead Data, 566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed.  Id.  All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated.  Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).  Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

21

### III.    Defendant DEA Complied with FOIA Requirements.

####  A.    DEA Conducted An Adequate Search and Found Records Responsive to Plaintiff's Requests.

To prevail in a FOIA case, a plaintiff must show that an agency has "(1) 'improperly' (2) 'withheld' (3) 'agency records.'" United States Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989), quoting Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S. 136, 150 (1980); see 5 U.S.C. § 552(a)(4)(B).  To obtain summary judgment in its favor, the agency's burden is to establish that it has conducted a search reasonably calculated to uncover all responsive records.  Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the absence and discoverability of documents.  Safeguard Servs., Inc. v. Securities & Exchange Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  The issue is not whether there might exist any other records possibly responsive to the request, but rather whether the actual search for responsive records was reasonable.  Id.; Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986).  The agency can establish the reasonableness of its search by affidavits if they are relatively detailed, non-conclusory, and made in good faith.  Weisberg, 745 F.2d at 1485; Perry v. Block, 684 F.2d 121, 125-26 (D.C. Cir. 1982).  As long as the agency submits detailed affidavits showing the scope and method of the search, then, in the absence of countervailing evidence, or apparent inconsistency of proof, dismissal or summary judgment is appropriate in its favor.  Perry, 684 F.2d at 127.

The agency's search should be reasonably calculated to uncover all responsive records. Weisberg, 745 F.2d at 1485.  Therefore, an agency should search those offices or components

reasonably likely to have responsive records. <u>Knight v. Food & Drug Admin.</u>, 938 F. Supp. 710, 716 (D. Kan. 1996). The FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request when responsive documents are likely to be located in one place. <u>Marks v. United States Dep't of Justice</u>, 578 F.2d 261, 263 (9th Cir. 1978). Nor does the FOIA require that an agency search every record system. <u>Oglesby v Dep't. of Army</u>, 920 F.2d at 68. Furthermore, the agency is not required to speculate about potential leads to the location of the responsive documents. <u>Kowalczyk v. Department of Justice</u>, 73 F.3d 386, 389 (D.C. Cir. 1996).

In this case, the DEA conducted a search that was more than adequate and found 83 pages of information that was responsive to Plaintiff's request. <u>See</u> Seidel Dec. ¶ 25. Plaintiff does not dispute the adequacy of this search. As a whole, Plaintiff's request was broadly construed to seek: (1) investigative records that referenced or related to Plaintiff; and (2), information about SA Laboy that could be contained in his personnel records.[6] Seidel Dec. ¶ 14. The criminal investigative records sought by Plaintiff was reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008 because it contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes. <u>Id.</u> ¶ 15. The portion of Plaintiff's request that was broadly construed to seek investigative records that referenced or related to him would be located in IRFS; IRFS is the only system that would contain such records responsive to items 1, 2 and 4 of Plaintiff's request. <u>Id.</u> The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative

---

[6]As item 3 of Plaintiff's request did not request records, but posed questions for the Agency to answer, no research or investigatory action was undertaken to compile a list of the "names, assignments and locations" of any agents present when he made any oral statements. <u>See</u> Seidel Dec. at ¶ 14 & Exhibit A, page 2, item 3.

reports and information from IRFS. Seidel Dec. ¶ 16. As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA'Form-6, or other documents by date, that contain information regarding a particular individual or subject of an investigation. Id. at ¶ 17. On June 7, 2005, a NADDIS query was conducted by SARO pre-processor, in response to the Plaintiff's request dated April 4, 2005. Id. ¶ 18. Through NADDIS two (2) DEA investigative files associated with the name "Nelson Jose Del Rosario" and NADDIS number "5032612:" file numbers G5-00-0192 and G5-01-0015 were identified. Id.

As a result of the above NADDIS query, the SARO pre-processor requested responsive records from file number G5-00-0192 from the DEA field division where the file was maintained: the DEA Caribbean Field Division in Puerto Rico. Seidel Dec. at ¶ 19. The SARO pre-processor also inquired about the case status of file number G5-00-0192. Id. In response to SARO's request for responsive records, agents of the DEA Caribbean Field Division informed SARO in September, 2005 that investigative file number G5-00-0192 was still an open investigation due to a pending fugitive. Id. A NADDIS query of file number "G5-00-0192" by the SARO pre-processor in October 2005 confirmed that file "G5-00-0192" had a file status of "pending fugitive" and that the file title of "G5-00-0192" is a subject who is not the Plaintiff. Id. Moreover, file G5-00-0192 directly related to the arrest of Plaintiff and his associates at the Luis Munoz International Airport, San Juan Puerto Rico on July 29, 2000. Id.

SARO received a total of 81 pages of responsive material from file number G5-00-0192 from the DEA Caribbean Field Division and 58 of the 81 responsive pages were withheld in their entirety by DEA-SARO under Exemption (b)(7)(A). Seidel Dec. at ¶ 20. At the request of the DEA Caribbean Field Division to prevent harm to future enforcement efforts, SARO only processed those

pages (23) for release that directly pertained to Plaintiff's arrest or reported on his subsequent criminal case. Id. Portions of these 23 pages were released to the Plaintiff on January 13, 2006. Seidel Dec. at ¶ 20 & Exhibit J (Letter, dated January 13, 2006 from Katherine L. Myrick, Chief, Operations Unit, FOI/Records Management Section to Plaintiff).

In the course of litigation review conducted by DEA Office of Chief Counsel, Administrative Law Section (CCA), DEA determined that additional information should be released to Plaintiff and subsequently released this information. Seidel Dec. at ¶¶ 22-23. Pursuant to this review, CCA identified seven (7) additional pages of the 58 pages from file number G5-00-0192 withheld in their entirety by SARO on January 13, 2006 that should have been processed earlier for release. Id. at ¶ 22. These additional seven (7) pages were released to Plaintiff because the pages directly pertained to the Plaintiff's arrest or reported on his subsequent criminal case and therefore, the additional pages could not be reasonably expected to harm future enforcement proceedings as the case against the Plaintiff was complete in 2002. Id. at Exhibit R (Supplemental Release of Documents, dated April 7, 2008.).

CCA also determined that the small, second file identified by the NADDIS query performed by the SARO pre-processor--file number G5-01-0015--should be processed for release. Seidel Dec. ¶ 23. File number G5-01-0015 names a subject who is not Plaintiff, and the DEA Caribbean Division confirmed that the case file is now closed. Id. While G5-01-0015 is a criminal investigation into another matter at the San Juan airport, the two-page report of investigation (ROI) (DEA Form 6) contained in the file references Plaintiff's July 29, 2000 arrest. Id. Due to an administrative oversight, DEA-SARO did not process the two-page ROI in the G5-01-0015 file along with the documents contained in the larger and more responsive G5-00-0192 file. Id. Consistent with the initial broad

25

interpretation of Plaintiff's request by DEA-SARO, this report was processed by CCA with one page partially released and one page withheld in its entirety as part of the April 7, 2008 supplemental release. Seidel Dec. at ¶23 & Exhibit R. Thus, when these two pages from G5-01-0015 file were added to the 81 pages of responsive material, a total number of responsive pages located during the search conducted by DEA increased to 83. Seidel Dec. at ¶ 25.

There are no other files contained in IRFS that are responsive to Plaintiff's request. Seidel Dec. at ¶ 24. CCA confirmed in April, 2008 with agents of the DEA Carribean Field Division that file G5-00-192 remains an open investigation due to a pending fugitive. Id. CCA further confirmed that the DEA Carribean Field Division does not use or maintain operational or daily "logs" that record the activity of agents. Id. DEA-SARO queried NADDIS again in April, 2008 by Plaintiff's name and NADDIS number and this query returned the same results as the initial query performed in 2005. Id. As a result, even if Plaintiff's subsequent correspondence of August 21, 2007 (Exhibit N) seeking all documents bearing his name were interpreted as a second FOIA request, there are no other investigative files known to the agency that would contain any information in addition to files G5-00-0192 and G5-01-0015. Id.

Based on the nature of the request, it was reasonable for DEA to conduct searches of its automated record systems, using personal identifying information for the Plaintiff, and to conclude that their record systems properly identified any potentially responsive documents.

**B.    DEA Properly Processed Plaintiff's FOIA Request.**

**1.    DEA Produced an Adequate Vaughn Index.**

DEA produced the Declaration of Michael G. Seidel which described the pages withheld in full or in part, with excisions made by the DEA pursuant to Privacy Act Exemption (j)(2) and FOIA

Exemptions 2, 7(A), 7(C), and 7(F).  Exhibit S attached to the Seidel Declaration is a detailed Vaughn

Index explaining  DEA's withholdings of portions of the 30 pages released to Plaintiff and the one

(1) page withheld in its entirety from file number G5-01-0015.[7]  Seidel Dec. ¶ 25.  The Vaughn Index

describes the document's date, purpose, its senders and recipients, the material deleted, the exemption

applied, and a description of the contents deleted.  Seidel Dec. at ¶ 25 &  Exhibit S.  See Information

Network For Responsible Mining v. Dep't. of Energy, No. 06-02271 (REB-CBS), 2008 WL 762248,

at *5 (D. Colo. Mar. 18, 2008) (The Department of Energy's Vaughn Index and declarations "identify

specifically each document withheld, state specifically the statutory exemption claimed, and explain

specifically how disclosure would damage the interests protected by the claimed exemption.").

    To avoid the release of information that could jeopardize an ongoing investigation or harm

future enforcement proceedings against a fugitive, DEA did not provide a more detailed Vaughn

index (in the format of Exhibit S) for the 51 pages from file G5-00-0192 withheld in their entirety.

These 51 pages are subject to withholding under FOIA Exemption (b)(7)(A).  Seidel Dec. at ¶ 25.

Instead, DEA used the Seidel Declaration to provide inter alia more generalized description of these

records, the articulable harm to prospective enforcement efforts, and the assertion of other FOIA

Exemptions that apply to the Exemption (b)(7)(A) material.

    Therefore, DEA's Vaughn Index is more than adequate because it provides the "reasonable

basis to evaluate the claim of privilege" standard set forth in Delaney, 826 F.2d at 128.

---

[7] As information was not withheld, the one (1) page released in its entirety from file number
G5-00-0192 (page 80) is not included in Exhibit S.  Seidel Dec. at ¶ 25.

## 2.    DEA Properly Applied Privacy Act Exemption (j)(2).

IRFS is a Privacy Act System of Records that was last reported at 72 Fed. Reg. 3410 and last published in its entirety at 61 Fed. Reg. 54219.  Seidel Dec. at ¶ 40.  In accordance with the Privacy Act, rules were promulgated, pursuant to 5 U.S.C. §552a(j)(2), to exempt records contained in IRFS from access and the release of the accounting of disclosures.  Id.; 28 C.F.R. § 16.98(c)(3).

In accordance with the Privacy Act, 5 U.S.C. §552a(b), except pursuant to a written request by, or with prior written consent of the individual to whom the record pertains, no information relating to a third-party was released, unless required by the FOIA or for a routine use or pursuant to court order.  Seidel Dec. at ¶ 41.  No routine use existed for and the Plaintiff did not provide a release authorization or proof of death for the release of any information about Special Agent Laboy or other third party information, and DEA has not received any court order.  Id.  Therefore, all third-party information was withheld where release was not required by the FOIA.  Id.

## 3.    DEA Properly Applied Exemption (2).

Exemption 2 justifies in part DEA's withholding of documents.  See Seidel Dec. at ¶¶ 48-51.  The FOIA, 5 U.S.C. § 552 (b)(2), exempts from disclosure information relating to the internal rules and practices of any agency.  Id. at ¶ 48.  Pursuant to DEA rules and practices as described in the DEA Agents Manual, most of the pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug Enforcement Program) codes, NADDIS numbers, and a DEA confidential informant numbers.  Seidel Dec. at ¶ 48.  The G-DEP,  NADDIS, and confidential informant codes are part of DEA's internal system of identifying information and individuals.  Id.

G-DEP codes are assigned to all DEA cases at the time the case file is opened and reflect the classification of the violator, the types and amount of suspected drugs involved, the priority of the

investigation and the suspected location and scope of criminal activity. Seidel Dec. at ¶ 48 (a). The release of the G-DEP code would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings. Seidel Dec. at ¶ 49. Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to information known to DEA, to avoid detection and apprehension and possibly to fashion alibis for suspected activities. Id.; see Kelly v. FAA, No. 07-00634, 2008 U.S. Dist. LEXIS 28505 at *5 (E.D. Cal. Apr. 8, 2008) (noting that the FAA properly applied high Exemption 2 to withhold a grading sheet used to rank DPE applicants because "[I]f an applicant could discover the ranking methods used on the grading sheet, it would provide a route to circumvent the regulatory requirements by allowing embellishment of the applicant's experiences to match those treated most favorably by the grading sheet."). Disclosure of the code would, therefore, thwart the Drug Enforcement Administration's investigative and law enforcement efforts. Id.

NADDIS numbers are multi-digit codes assigned to drug violators and suspected drug violators known to DEA. Seidel Dec. at ¶ 48(b). Each number is unique and is assigned to only one violator within the DEA NADDIS indices. Id. The NADDIS indices are exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. 16.98 (2005). Id. Knowledge of the NADDIS number provides a means of finding out not only drug violator information about the subject but also personal information about himself, relatives and any third parties identifiable with the violator. Id. Thus, DEA relied on Exemptions (b)(7)(C) and (b)(7)(F), together with exemption (b)(2), to justify withholding third- party NADDIS numbers. Id.

Furthermore, NADDIS numbers and confidential informant codes are unique and personal to the individual to whom the number applies. Seidel Dec. at ¶ 50. They are assigned by DEA for

internal use and there is no legitimate public interest in the release of these codes. Id. See Hidalgo v. FBI, No. 06-1513, 2008 WL 852622, at *4 (D.D.C. Mar. 31, 2008)(Permanent source symbol numbers, telephone numbers of FBI personnel, third party information, and "internal agency data in which there is no public interest" are withholdable, "under Exemption 2 and other applicable exemptions.")

Information withheld under Exemption (b)(2) for the 32 pages not subject to Exemption (b)(7)(A) are itemized in the Vaughn index at Exhibit S to the Seidel Declaration. Seidel Dec. at ¶ 51. The 51 pages withheld under Exemption (b)(7)(A) as described *infra* also contain G-DEP and NADDIS code information that is withheld under Exemption (b)(2) and is located on page numbers 4, 6, 8, 9, 12, 13, 15-18, 23-26, 29-39, 41, 43-61, and 75-77. Id.

### 4.    DEA Properly Applied Exemption 6.

Similar to Exemption 7(C), 5 U.S.C. § 552 (b)(6) prescribes an exemption for personnel, and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy. To the extent that Plaintiff's request seeks information about SA Laboy that could be contained in his personnel records, DEA employs a privacy "Glomar" response under Exemptions (b)(6) and (b)(7)(C). Seidel Dec. ¶ 60. DEA employs the privacy "Glomar" in response to requests for information on agents, employees, or other third parties in order to protect the privacy interests of these individuals. Id. Merely confirming that records about an individual exist in a DEA record system is a disclosure under the Privacy Act and may have a potentially stigmatizing or embarrassing effect. Id. As a result, simply confirming that DEA possesses records on an individual, in and of itself, would constitute an unwarranted violation of an individual's privacy. Id. See Barbosa v. DEA, No. 07-1052, 2008 WL 833103, at *2-3, (D.D.C. Mar. 28, 2008) (DEA's use of a "Glomar" response,

refusing to confirm or deny the existence of responsive records, was appropriate. Plaintiff requested law enforcement records on an individual he alleged was a DEA informant, but plaintiff did not provide a waiver from this individual or proof of his death. "Plaintiff has not demonstrated that an overriding public interest warrants disclosure . . . .").

Accordingly, DEA properly applied Exemption 6 to withhold information about SA Laboy that could be contained in his personnel records.

**5.      DEA Properly Applied Exemption 7.**

As an initial matter, DEA has the requisite law enforcement purpose within the meaning of this exemption. DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq.* (hereinafter, the Act) which authorizes DEA to enforce the Act through, for example, the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange information in support of drug traffic prevention and control. Seidel Dec. at ¶ 42.

DEA's mission is consistent with the range of the law enforcement purposes of other agencies that have passed judicial scrutiny regarding this threshold issue under Exemption 7. See, e.g., Mittleman v. OPM, 76 F.3d 1240, 1241-43 (D.C. Cir. 1996) (OPM background investigation), *cert. denied*, 519 U.S. 1123 (1997); Heggestad v. DOJ, 182 F. Supp. 2d 1, 13 (D.D.C. 2000) (Hogan, J.) (IRS has law enforcement purpose); Center to Prevent Handgun Violence v. Dep't of Treasury, 981 F. Supp. 20 (D.D.C. 1997) (collecting information on all repeat handgun sales); Doe v. DOJ, 790 F.Supp. 17, 20-21 (D.D.C. 1992) (background investigations). The records deemed responsive to

Plaintiff's FOIA request are criminal investigative records and were compiled during criminal law enforcement investigations of Plaintiff and several third parties.  Seidel Dec. at ¶ 43.

>           a.       **DEA Properly Applied Exemption 7(A).**

In addition to satisfying the general threshold requirements of Exemption 7, DEA also satisfied the specific requirements of Exemption 7 (A).  5 U.S.C. § 552 (b)(7)(A) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to interfere with enforcement proceedings.  Seidel Dec. at ¶ 44.

DEA properly applied Exemption (7)(A) to various pages of the investigation file number G5-00-0192.  That file remains open, since it involves an indicted individual who is a fugitive, as well as others who are of investigative interest to DEA.  Seidel Dec. at ¶ 45.  DEA withheld the following 51 responsive pages in their entirety pursuant to Exemption (7)(A): pages 4-9; pages 12 and 13; pages15-17; pages 22-26; pages 29-39; page 41; pages 43-61; pages 75-77; and page 81.  Id.

Disclosure of any of the details in the 51 pages of the open G5-00-0192 investigation could reasonably be expected to interfere with enforcement proceedings.  The supervisory agent responsible for the open G5-00-0192 investigation at the Caribbean Field Division advised Mr. Seidel that the disclosure of any of the details contained in the 51 pages cited above would reveal the scope, direction, nature and pace of the investigation, as well as  information that would likely be used in the future prosecution of the fugitive.  Seidel Dec. at ¶ 46.  Disclosure of any details regarding this ongoing investigation could lead to the destruction of evidence.  Id.  If the information is released, the individual who is an indicted fugitive and others who are of investigative interest in this case could use the information to avoid apprehension, develop alibis, create factitious defenses or intimidate, harass or harm potential witnesses.  Id.; see Hidalgo, 2008 WL 852622 at *5 (FBI  need

only show that "'the material withheld relates to a concrete prospective law enforcement proceeding.'" Because the FBI continues to search for co-conspirators, it has satisfied its burden.).  Disclosure of techniques and strategies employed in this case could force DEA to abandon current investigative methods and develop new methods which may not be as effective in gathering investigative information.  Id.  Moreover, the 51 pages contain information about persons who may be suspected of criminal offenses and, therefore, may be targets for investigation.  Id.  Disclosure of the identities of these persons will certainly interfere with any possibility of successful investigation and may well render effective investigation impossible.  Id.  Thus, release of any information from these 51 pages could interfere with the ongoing investigation and any eventual criminal proceedings.  Id.

Accordingly, DEA properly withheld the information on the 51 responses pages pursuant to Exemption 7(A).[8]

### b.    DEA Properly Applied Exemption 7(C).

DEA also satisfied the specific requirements of Exemption 7 (C).  The FOIA, 5 U.S.C. § 552 (b)(7)(C) sets forth an exemption for records or information compiled for law enforcement purposes, the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Seidel Dec. at ¶ 52.  Many of the documents in the investigative case files contain names and other identifying information that would reveal the identity of and disclose personal information about individuals who were involved or associated with Plaintiff.  Id.  The identities of,

_____

[8] The remaining 32 responsive pages were not subject to Exemption 7(A) because they directly pertain to Plaintiff's arrest or report on his subsequent criminal case which was concluded in 2002.  Seidel Dec. at ¶ 47.  Therefore, their release would not interfere with the ongoing G5-00-0192 criminal investigation or a prospective enforcement proceeding.  Id.

and information about, these individuals are protected from disclosure.  Id.  Those protected include third parties, suspects, co-defendants, and confidential sources of information.  Id.

In making the determination to withhold this information, the DEA balanced the privacy interests of these individuals against any discernible public interest in disclosure of their identities. Seidel Dec. at ¶ 53.  Here, Plaintiff provided no facts to demonstrate a public interest that would outweigh the privacy interests of the individuals.  Id.

In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue.  Seidel Dec. at ¶ 54.  The public interest in disclosure of the information was determined by whether the information in question would inform Plaintiff or the general public about DEA's performance of its mission to enforce federal criminal statutes and the Controlled Substance Act, and/or how DEA conducts its internal operations and investigations.  Id.  In this case, it was determined that there was no legitimate public interest in the information withheld under Exemption 7 (C), and release of any information about a third party would constitute an unwarranted invasion of that third party's personal privacy.  Id.; see Adamowicz v. IRS, No. 06-3919, 2008 WL 918699 at *11, (S.D.N.Y. Mar. 31, 2008) (IRS appropriately invoked Exemption 7(C) to withhold personal information concerning IRS agents and other third parties.  Plaintiffs"offer[ed] nothing beyond their own unsupported allegations of improper use of taxpayer information. . . . Such a speculative public interest is not sufficient to overcome the real privacy interests of individual taxpayers.");  Cole-El v. U.S. Dep't of Justice, No. 03-1013, slip op. at 10 (D.D.C. Aug. 26, 2004) ("[Plaintiff's] interest in attacking his conviction does not constitute a public interest sufficient to overcome [a third party's] privacy interests.") (Exemption 7(C)), aff'd, No. 04-5329, 2005 U.S. App. LEXIS 7358, at *2-3 (D.C.

34

Cir. Apr. 27, 2005) ("As appellant has not demonstrated a public interest in disclosure, the countervailing interest in privacy defeated his request for documents under the Freedom of Information Act.").

The identities of DEA Special Agents (including supervisory agents), other federal and state/local law enforcement officers, government employees, DEA drug evidence custodians, forensic chemists, and laboratory personnel were withheld. Seidel Dec. at ¶¶ 55, 57. DEA Special Agents, other law enforcement officers, and government employees and personnel were assigned to handle tasks relating to an official investigation into the criminal activity of Plaintiff and other individuals. Seidel Dec. at ¶¶ 56, 58. Releasing their identities and any information pertaining to these individuals would place these individuals in a position where they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigation. Id. at ¶¶ 56-58. Moreover, the DEA agents, other law enforcement officers, and government employees could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Id. at ¶¶ 56, 58. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. Id. There is no public interest to be served by releasing the identities of these individuals. Id. ¶¶ 57, 58. Accordingly, Defendant properly withheld the documents under Exemption 7(C).

### c.    DEA Properly Applied Exemption 7(D).

DEA asserts Exemption 7(D) to withhold four pages- one page (page 62) from the 32 pages not subject to Exemption 7(A), and three pages (pages 55, 58, and 60) from 51 pages withheld under Exemption 7(A). Seidel Dec. at ¶ 65. The FOIA, 5 U.S.C. § 552 (b)(7)(D) sets forth an exemption

35

for information compiled for law enforcement purposes, the disclosure of which could reasonably be expected to reveal the identity of a confidential source and/or information furnished by a confidential source. Id. at ¶ 62.   Significantly, the statute affords protection from disclosure to all information furnished by third-party sources, as well as the actual identity of the cooperating individual, if there has been an explicit assurance of confidentiality, or circumstances exist from which such an assurance could reasonably be inferred. U.S. Dept. of Justice v. Landano, 508 U.S. 165 (1993).

When it cannot be ascertained that a source was found to have been expressly made a promise of confidentiality, certain circumstances characteristically may support an inference of confidentiality, such as the character of the crime being investigated, and the source's relation to the nature of the crime. Seidel Dec. at ¶ 63; see also, CNA Holdings, Inc. v. DOJ, No. 07-2084-B, 2008 WL 2002050, at *3 (N.D. Tex. May 9, 2008) ("inquiry is not whether Mr. Stanley [the informant] chose to divulge the information he gave to the FBI to others. The inquiry is whether, under the circumstances, Mr. Stanley believed that the FBI would not openly divulge the information he gave to it."). Plaintiff was convicted of conspiracy to distribute and possession with the intent to distribute cocaine and heroin. Id. at ¶ 64. It is reasonable to infer that any individuals who provided information about Plaintiff or his associates would fear for their safety if their identities or the information they provided were revealed, because violence is inherent in the trade in illicit substances, such as cocaine and heroin. Id. Additionally, release of the names of any sources or the information they provided could jeopardize DEA operations, since their cooperation and that of other similarly situated individuals could be needed in the ongoing G5-00-0192 investigation herein or in other future criminal investigations. Id.

36

In this case, the withheld material contains information furnished by third-party sources, who were given an implicit assurance of confidentiality. Therefore, the DEA properly applied Exemption 7(D) to justify withholding these documents.

### d.    DEA Properly Applied Exemption 7(F).

DEA properly relies on Exemption 7(F) to withhold the names and other identifying information of DEA Special Agents (including supervisory agents), other state/local law enforcement officers, and supporting DEA employees (to include chemists, laboratory personnel, and evidence custodians). Seidel Dec. at ¶¶ 66, 71. DEA Special Agents are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations. Id. at ¶ 67. Moreover, DEA employees who support the agent investigations, such as the chemists, lab personnel, and evidence custodians, are frequently called upon to perform critical functions in support of enforcement efforts. Id.

Exemption (b)(7)(F) sets forth an exemption for records or information compiled for law enforcement purposes, the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual. Seidel Dec. at ¶ 66. Historically, the release of DEA Special Agents' identities has resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents. Id. at ¶ 68. Specifically, death threats have been made against a cooperating individual in one of the cases against Plaintiff and his associates; therefore, there is a bona fide expectation of violence associated with the release of information herein given these threats and the fugitive at large. Id. DEA could, therefore, reasonably anticipate that other law enforcement officers and DEA employees who supported them would become targets of similar abuse if they were associated with DEA's enforcement operations. Id. Furthermore, the DEA

37

considers it to be in the public interest not to disclose the identities of Special Agents so they may effectively pursue their undercover and investigatory assignments. Seidel Dec. at ¶ 69.

The names and other identifying information of potential witnesses and other third-parties who are not criminal associates of Plaintiff are also withheld under Exemption (b)(7)(F). Seidel Dec. at ¶ 70. Given the propensity of violence inherent in the trade in illicit substances such as cocaine and heroin, the death threats made against a cooperating individual in one of the cases against Plaintiff and his associates, and the pending fugitive, there is a reasonable expectation that the release of identifying information about these individuals would pose a genuine danger to their life or physical safety. Id. This information is also withheld under Exemption (b)(7)(C). Id.

Accordingly, DEA properly applied Exemption 7(F) to withhold confidential source information.

## 5. DEA Properly Segregated Exempt from Non-Exempt Information Where Appropriate.

DEA's declaration specifically addresses the issue of segregability and attests to the agency's review for segregability as to all pages withheld. See Seidel Dec. at ¶¶ 72-73. Fifty-one (51) pages subject to Exemption 7(A) were withheld in their entirety as part of the open G5-00-0192 investigation. Seidel Dec. at ¶ 72. The DEA carefully examined these 51 pages to determine whether reasonably segregable information could be released. Id. After information is withheld pursuant to FOIA Exemptions (b)(2), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(F), only blank pages, pages with only Plaintiff's name and identifying information, the investigative file number, and/or pages with incomprehensible words and phrases would remain. Id. The release of that information would not contribute to the understanding of how the DEA or the Government conducts business. Id. Thus, the 51 pages were withheld in their entirety. Id.

The 32 pages not subject to Exemption (7)(A) were also examined to determine whether any reasonably segregable information could be released and include pages 1-3, 10, 11, 14, 18-21, 27, 28, 40, 42, 62-74, 78-80, 82, and 83.  Seidel Dec. at ¶ 73.  Page 80 (photos) was released in full.  Id. Page 83 was withheld in its entirety because after withholding information under FOIA Exemptions (b)(2), (b)(7)(C), and (b)(7)(F), only Plaintiff's name and the investigative file number would remain. Id.  As such, release would not result in the disclosure of any useful information that would shed light on how DEA or the Government conducts business.  Id.  Portions of the remaining 30 pages were released.  See Id. at ¶¶ 25, 73.

Accordingly, DEA complied with its segregation obligations pursuant to Mead Data Central.

## IV.    CONCLUSION

WHEREFORE, the Defendants respectfully request that the Court grant their motion for summary judgment and enter judgment in their favor.


Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
ALEXANDER D. SHOAIBI, DC Bar # 423587
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236

Counsel for the Defendants

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Defendants' Motion for Summary Judgment, Statement of Material Facts, Memorandum in Support of the Motion, and proposed order were served upon *pro se* Plaintiff by depositing copies in the U.S. Mail, first class postage prepaid, addressed to:

Nelson Jose Del Rosario
R1908-069
MOSHANNON VALLEY CORRECTIONAL CENTER
555 I-Cornel Drive
Philipsburg, PA 16866

on this 9th day of June 2008.

_____/s/_____
ALEXANDER D. SHOAIBI, DC Bar # 423587
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W. -- Room E-4218
Washington, D.C. 20530
(202) 514-7236

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NELSON JOSE DEL ROSARIO, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 08-0079 JDB |
| DRUG ENFORCEMENT ADMINISTRATION, | ) | |
| Et al. | ) | |
| Defendant | ) | |
| | ) | |

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, hereby make the following Declaration in the above-styled case under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am currently employed as a Senior Attorney by the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), Office of Chief Counsel, Administrative Law Section. I have been employed in this capacity from September 2006 to the present. In the normal course of my duties, I provide general legal support for the DEA Headquarters staff, to include matters involving the Freedom of Information Act (FOIA), 5 U.S.C.§ 552 and Privacy Act (PA), 5 U.S.C. § 552a. I also provide necessary litigation support to Assistant United States Attorneys in FOIA and PA cases.

2. I am familiar with DOJ and DEA policies, practices and procedures regarding the administration of, and processing and release of information requested under the FOIA and PA, and DEA PA "systems of records." 5 U.S.C. § 552a(a)(5). In the normal course of my duties, I

1

Attachment 1

have access to records maintained by the DEA in the ordinary course of Agency business. This includes records maintained in the DEA's Investigative Reporting and Filing System (IRFS), records compiled for law enforcement purposes, and other Agency records.

3. I am also familiar with the policies, practices, and procedures of the DEA Freedom of Information Operations Unit (DEA-SARO), the DEA office responsible for responding to, searching for, and the processing and releasing of information requested under the FOIA and PA. I likewise have access to the FOIA processing records maintained by DEA-SARO that document the administrative processing of DEA FOIA requests.

4. The statements I make hereinafter are made on the basis of my own personal knowledge, review of DEA records, and information acquired by me in the performance of my official duties to include coordination with DEA-SARO and the DEA Carribean Field Division. In preparing this declaration, I have read and am familiar with the complaint in this action, as well as the FOIA processing file maintained by DEA-SARO.

## **SUMMARY OF CORRESPONDENCE AND ADMINISTRATIVE ACTION**
### **DEA FOIA REQUEST 05-0877-P**

5. By letter dated April 4, 2005 to the DEA Freedom of Information Section, plaintiff listed four items within the context of his July 29, 2000 arrest and a subsequent suppression hearing where plaintiff averred that "DEA supervisor ELVIN LABOY" testified. See Exhibit A, pg. 1. Plaintiff requested the following four items:

-2-

1. copies of police computerized and of daily logs;

2. The substance of any oral statements which the agent Laboy alleged that was made by me, whether before or after the indictment in response to an interrogation by any person then known to be a government agent;

3. The names, assignments and locations of the agents and/or officers present at time of any oral statement referred to in request no.2 was made, and

4. Copies of police computerized and of daily logs, showing that agent Laboy was in fact present at the international Airport "Luis Munoz Marin" in San Juan, Puerto Rico on July 29, 2000.

A copy of the plaintiff's request dated April 4, 2005 with certificate of identity is attached as Exhibit A.


6. By letter dated April 22, 2005, from Katherine Myrick, the DEA-SARO unit chief, DEA acknowledged plaintiff's request, plaintiff was informed of his fee category, and he was instructed to submit a statement expressing his willingness to pay applicable processing fees as required by 28 C.F.R.§ 16.3(C). A copy of the DEA-SARO acknowledgment letter is attached as Exhibit B.


7. By letter dated April 28, 2005, plaintiff expressed his willingness to pay processing fees. A copy of plaintiff's letter is attached as Exhibit C. In response, by letter dated June 10, 2005, DEA-SARO informed plaintiff that his request had been assigned for processing under case number 05-0877-P, that his request was placed on a list of requests awaiting processing, and that his request would be processed in chronological order. *See* attached DEA-SARO letter, dated June 10, 2005 at Exhibit D.


8. By letter dated September 2, 2005, plaintiff requested a status update on the processing of his FOIA request. *See* attached plaintiff letter at Exhibit E. DEA-SARO responded to plaintiff's

status query by letter dated September 16, 2005, informing plaintiff again that his request was

being processed in chronological order on a "first in, first out" basis due to the large number of

requests received by DEA, a practice consistent with the *Open America* decision. *Open America*

*v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976). The letter also informed

plaintiff that it was necessary to send a search action to the DEA Caribbean Division to locate

records responsive to his request and that DEA-SARO was awaiting a response from that field

division office. *See* DEA-SARO letter, dated September 16, 2005 at Exhibit F.

9. By letter dated October 18, 2005 plaintiff requested an exception to DEA-SARO's "first in,

first out" FOIA processing policy. Citing DEA-SARO's letter of September 16, 2005, plaintiff

claimed an "exceptional need" for his request to be processed expeditiously. *See* plaintiff's letter

at Exhibit G. DEA-SARO replied to plaintiff by letter dated November 17, 2005 and informed

him that a reasonable search for his records, to include the DEA Carribean Division, had been

concluded; therefore, no additional delays in processing his request were anticipated. A copy of

this DEA-SARO letter is at Exhibit H. Plaintiff responded to this DEA-SARO letter by sending

a "Second Notice" of his letter dated October 18, 2005 which was received by DEA-SARO on

November 29, 2005. *See* copy of plaintiff's "Second Notice" at Exhibit I.

10. By letter dated January 13, 2006, DEA-SARO released 23 pages of documents responsive to

plaintiff's request with redactions and withheld 58 pages in full, citing FOIA Exemptions (b)(2),

(b)(7)(A), (b)(7)(C), (b)(7)(F) and PA access Exemption (j)(2). Plaintiff was also informed that a

privacy waiver was required from Special Agent (SA) Laboy before DEA would confirm or deny

the existence of any "personal information" about the agent in its files. The letter further

-4-

informed plaintiff of his right to appeal to the Department of Justice Office of Information and Privacy (DOJ-OIP). A copy of DEA-SARO's letter, dated January 13, 2006 is attached at Exhibit J.

11. Plaintiff appealed to DOJ-OIP by letter dated February 1, 2006 and limited his appeal to the Glomar[1]-type response concerning any records related to SA Laboy (*See* Exhibit K) which DOJ-OIP acknowledged on February 17, 2006. *See* Exhibit L. By letter dated February 17, 2007, DOJ-OIP affirmed DEA-SARO's action of refusing to confirm or deny the existence of records about SA Laboy in its files. A copy of this denial letter is attached at Exhibit M.

12. By letter August 21, 2007, plaintiff wrote to DEA-SARO again and referred to an attached letter dated May 8, 2007 which he purported was previously sent to DEA. The attached May 8, 2007 letter cited the administrative case numbers assigned to his original request and appeal, and sought "any and all documents bearing my name," but then specified that the documents he was requesting were the "dayli [sic] activity log for Drug Enforcement Agent (DEA) Elvin Laboy." A copy of these letters are attached at Exhibit N. Plaintiff followed-up with a subsequent letter dated October 4, 2007, seeking a response. *See* Exhibit O.

13. DEA-SARO responded to plaintiff's queries of August 21, 2007 and October 4, 2007 with identical letters dated October 10, 2007 (Exhibit P) and November 7, 2007 (Exhibit Q) which enclosed a copy of OIP's appeal denial action (Exhibit M) and informed plaintiff that no further action would be taken.

---

[1]*Phillippi v. Central Intelligence Agency*, 546 F.2d 1009, 1014-15 (D.C. Cir. 1976) (CIA refused to confirm or deny existence of secret vessel, the Hughes Glomar Explorer).

**ADEQUACY OF SEARCH**

14. Plaintiff's letter dated April 4, 2005 was assigned DEA FOIA Request No. 05-0877-P by DEA-SARO. As a whole, plaintiff's request was broadly construed to seek: (1) investigative records that referenced or related to the plaintiff; and (2), information about SA Laboy that could be contained in his personnel records. As item 3 of plaintiff's request did not request records, but posed questions for the Agency to answer, no research or investigatory action was undertaken to compile a list of the "names, assignments and locations" of any agents present when he made any oral statements. *See* Exhibit A, page 2, item 3.

15. The criminal investigative information sought by the plaintiff was reasonably likely to be found in investigative files contained in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008. IRFS is the DEA system of records that contains all administrative, general, and investigation files compiled by DEA for law enforcement purposes. The portion of plaintiff's request that was broadly construed to seek investigative records that referenced or related to him would be located in IRFS; IRFS is the only system that would contain such records responsive to items 1, 2 and 4 of plaintiff's request.

16. The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS.

17. As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain information regarding

-6-

a particular individual or subject of an investigation. Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.

18. On June 7, 2005, a NADDIS query was conducted by SARO, in response to the plaintiff's request dated April 4, 2005. The search was conducted by a SARO pre-processor, who performed a subject and alias name query using the Plaintiff's name. The query produced one subject with the name "Nelson Jose Del Rosario," who was arrested in Puerto Rico on July 29, 2000 and indexed in NADDIS under number "5032612." NADDIS pointed to two DEA investigative files associated with the name "Nelson Jose Del Rosario" and NADDIS number "5032612:" file number G5-00-0192 and G5-01-0015.

19. As a result of the above NADDIS query, the SARO pre-processor requested responsive records from file number G5-00-0192 from the DEA field division where the file was maintained: the DEA Caribbean Field Division in Puerto Rico. The SARO pre-processor also inquired about the case status of file number G5-00-0192. In response to SARO's request for responsive records, agents of the DEA Caribbean Field Division informed SARO in September, 2005 that investigative file number G5-00-0192 was still an open investigation due to a pending fugitive. A NADDIS query of file number "G5-00-0192" by the SARO pre-processor in October 2005 confirmed that file "G5-00-0192" had a file status of "pending fugitive" and that the file title of "G5-00-0192" is a subject who is not the plaintiff. Moreover, file G5-00-0192 directly related to the arrest of the plaintiff and his associates at the Luis Munoz International Airport, San Juan Puerto Rico on July 29, 2000.

-7-

20.  SARO received a total of 81 pages of responsive material from file number G5-00-0192 from the DEA Caribbean Filed Division and 58 of the 81 responsive pages were withheld in their entirety by DEA-SARO under Exemption (b)(7)(A).  *See* Exhibit J.  At the request of the DEA Caribbean Field Division to prevent harm to future enforcement efforts, SARO only processed those pages (23) for release that directly pertained to plaintiff's arrest or reported on his subsequent criminal case.  Because the criminal case against plaintiff was final in 2002, the pages that directly pertained to plaintiff's arrest and subsequent case reporting were carved out of file number G5-00-0192.  This SARO processing segregated information that could jeopardize future enforcement efforts due to the ongoing G5-00-0192 investigation from information about the plaintiff that posed no harm to the investigation.  Portions of these 23 pages were released to the plaintiff on January 13, 2006.  Exhibit J

21.  After plaintiff's appeal was denied by DOJ-OIP, he wrote again to DEA-SARO in August 21, 2007. Exhibit N.  DEA-SARO declined to take further action (Exhibits P and Q) because this 2007 request was redundant to his initial request of April 4, 2005 and the subsequent Agency release of January 13, 2006.  Since plaintiff's 2007 request for all documents bearing his name was functionally the same as his initial request that was broadly construed to seek all investigative records that referenced or related to him, an additional search would be duplicative and as discussed in paragraph 24 below, moot.

## LITIGATION REVIEW

22.  The DEA Office of Chief Counsel, Administrative Law Section (CCA), conducted a litigation review of the administrative FOIA file and a segregability analysis of all responsive

-8-

pages including the pages withheld in their entirety by DEA-SARO under Exemption (b)(7)(A). Pursuant to this review, CCA identified seven (7) additional pages of the 58 pages from file number G5-00-0192 withheld in their entirety by SARO on January 13, 2006 that should have been processed earlier for release. CCA segregated these additional seven (7) pages for release processing because the pages directly pertained to the plaintiff's arrest or reported on his subsequent criminal case; therefore, the additional pages could not be reasonably expected to harm future enforcement proceedings as the case against the plaintiff was complete in 2002. The additional seven (7) pages were provided to the plaintiff by a supplemental release, dated April 7, 2008. A copy of the supplemental release is attached as Exhibit R.

23. CCA also determined that the small, second file identified by the NADDIS query performed by the SARO pre-processor--file number G5-01-0015--should be processed for release. File number G5-01-0015 names a subject who is not the plaintiff, and the DEA Caribbean Division confirmed that the case file is now closed. While G5-01-0015 is a criminal investigation into another matter at the San Juan airport, the two-page report of investigation (ROI) (DEA Form 6) contained in the file references plaintiff's July 29, 2000 arrest. Due to an administrative oversight, DEA-SARO did not process the two-page ROI in the G5-01-0015 file along with the documents contained in the larger and more responsive G5-00-0192 file. Consistent with the initial broad interpretation of plaintiff's request by DEA-SARO, this report was processed by CCA with one page partially released and one page withheld in its entirety as part of the April 7, 2008 supplemental release. *See* Exhibit R.

24. CCA confirmed in April, 2008 with agents of the DEA Carribean Field Division that file G5-00-192 remains an open investigation due to a pending fugitive. CCA further confirmed that the

-9-

DEA Carribean Field Division does not use or maintain operational or daily "logs" that record the

activity of agents. DEA-SARO queried NADDIS again in April, 2008 by plaintiff's name and

NADDIS number. The query returned the same results as the initial query performed in 2005:

NADDIS still indicates two DEA investigative files associated with the name "Nelson Jose Del

Rosario" and NADDIS number "5032612:" file number G5-00-0192 and G5-01-0015. Therefore,

there are no other files contained in IRFS that are responsive to plaintiff's request. As a result,

even if plaintiff's subsequent correspondence of August 21, 2007 (Exhibit N) seeking all

documents bearing his name were interpreted as a second FOIA request, there are no other

investigative files known to the agency that would contain any information in addition to files G5-

00-0192 and G5-01-0015. Moreover, plaintiff provided no additional information for the Agency

to reasonably conclude that responsive records would reside in records systems other than in

IRFS. In sum, even if DEA-SARO had performed a second search in 2007, the search result

would have been the same.

## DESCRIPTION OF RESPONSIVE MATERIAL

25. During the course of the administrative process and the litigation review, a total of 83 pages

of materials responsive to the plaintiff's request were identified; 81 pages from file number G5-

00-0192 and 2 pages from file number G5-01-0015. Of the 83 responsive pages, 31 pages were

released to the plaintiff. These 31 pages include, portions of 30 pages (29 pages from file number

G5-00-0192 and one (1) page from G5-01-0015) and one (1) page released in its entirety (file

number G5-00-0192). The remaining 52 pages were withheld in their entirety. 51 of those pages

are from file number G5-00-0192 and one (1) page is from file number G5-01-0015. Information

is withheld pursuant to FOIA Exemptions (b)(2), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(F), and PA

-10-

exemption (j)(2). Accounting for the 83 responsive pages for *Vaughn index* purposes, a detailed *Vaughn* index explaining DEA's withholdings of portions of the 30 pages released to plaintiff and the one (1) page withheld in its entirety from file number G5-01-0015 are attached as Exhibit S. As information was not withheld, the one (1) page released in its entirety from file number G5-00-0192 (page 80) is not included in Exhibit S. To avoid the release of information that could jeopardize an ongoing investigation or harm future enforcement proceedings against a fugitive, a more detailed Vaughn index (in the format of Exhibit S) is not included for the 51 pages from file G5-00-0192 withheld in their entirety. These 51 pages are subject to withholding under FOIA Exemption (b)(7)(A). A more generalized description of these records, the articulable harm to prospective enforcement efforts, and the assertion of other FOIA Exemptions that apply to the Exemption (b)(7)(A) material is provided below.

26. In this case, the 83 pages of responsive information consist of:

  (a). 22 DEA ROIs (DEA Forms 6 and 6a);

  (b). 3 DEA Personal History Reports (DEA Form 202);

  (c). 1 DEA Defendant Disposition Report (DEA Form 210);

  (d). 4 DEA Report of Drug Property Collected, Purchased or Seized (DEA Form 7);

  (e). 14 DEA Acquisition of Non-Drug Property and Regulatory Seizures (DEA Form 7a);

  (f). 3 miscellaneous arrest documents from the DEA Caribbean Field Division.

27. DEA investigative case files are established by the office commencing an investigation. The files are titled according to the name of the principal suspect violator or entity known to DEA at the time the file is opened. DEA does not maintain separate dossier investigative case files on every individual or entity that is of investigative interest.

-11-

28. Information gathered during the course of a DEA investigation is systematically gathered and included in the investigative case file. This information relates to the case subject and may also include other individuals such as those who are suspected of engaging in criminal activity in association with the subject of the file.

29. IRFS investigative case files generally contain several types of forms and other miscellaneous documents. The forms generally include (a) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a; (b) the DEA Personal History Report, DEA Form 202; (c) DEA Defendant Disposition Report, DEA Form 210; (d) the DEA Form 7, Report of Drug Property Collected, Purchased or Seized; (e) the DEA Form 7a, Acquisition of Non-Drug Property and Regulatory Seizures; and (f), other miscellaneous memoranda and documents such as cables.

30. The DEA Form 6, and form 6a, are multi-block forms that comprise the DEA ROI. The forms are used by DEA to memorialize investigative and intelligence activities, and information. The Form 6 is the initial page of the ROI and consists of 15 numbered blocks. Blocks 1 through 10 appear at the top, and Blocks 11 through 15 at the bottom. The middle of the page is the narrative section in which investigative details and information, and intelligence information are recorded. The Form 6a is the continuation page of the ROI and consists of six (6) numbered blocks appearing at the top followed by the narrative section that extends to the bottom of the page.

31. The Form 6, Block 4, and Form 6a, Block 2, contain a G-DEP identifier. The Form 6, Blocks 5, 9, 12, and 14, contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. The Form 6, Block 6, and Form 6a, Block 3, contains the file title, which is generally the subject of the investigation.

32. The narrative section may be broken into several sections which include a "Synopsis," "Details," "Evidence," "Vehicle Indexing" and/or "Indexing" sections. Ordinarily, the "Indexing Section" appears at the end of the narrative and is used by the preparer of the report to designate individuals and entities, by name, that are of investigative interest which the agent or intelligence analyst designates to be listed in NADDIS. In addition to the name of an individual, the indexing section may provide identifying details for the indexed individuals or entity that may include physical descriptions, aliases, social security numbers, various license numbers, addresses, and/or occupations.

33. The DEA Personal History Report, DEA Form 202, is a two-page multi-block form used (1) to identify and classify an individual, or update an earlier identification or classification under G-DEP, either prior to or at the time of the arrest, (2) to declare a defendant a fugitive, (3) as part of the establishment of a cooperating individual and (4) to correct personal data in the NADDIS index. The form consists of 76 blocks that are completed depending on the circumstances. Block 1 or 4a contains the file title, which is generally the subject of the investigation. Block 2 or 5 contain a G-DEP identifier; blocks 68, 69, 71, 72, 74, and 75 normally contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. Blocks 8 through 57 contain identifying information about the individual to whom the form pertains. Blocks 42 through 67 contain information related to and explaining the action being taken.

34. DEA Defendant Disposition Report, DEA Form 210, is a multi-block form that is used as the source document for the compilation of DEA defendant statistics, as well as the means by which DEA and the Federal Bureau of Investigation (FBI) track individual cases brought against DEA

defendants. A separate form 210 is prepared for each defendant prosecuted as the result of DEA investigative efforts. The form consists of 25 blocks of which Block 5 contains the G-DEP identifier; Block 6, the file title; Blocks 7 and 16, the defendant's name; Block 9, the defendant's NADDIS number; Blocks 16 - 20, personal information and identifiers of the defendant; and, Blocks 24 and 25, the name and signature of a DEA Special Agent or other law enforcement officer.

35.  The DEA Form 7,  Report of Drug Property Collected, Purchased or Seized,  includes a description of the alleged drugs seized, the quantity seized, and a laboratory analysis/comparison report.  The form consists of 39 blocks of which Block 3 contains the G-DEP identifier; Block 5, the file title; Block 16, the "Remarks," contains descriptive information that may include names of law enforcement officers and third parties, and other information regarding the seizure; Blocks 17, 18, 20, 21, 23, 24, 34 and 37 contain the names and/or signatures of DEA Special Agents, other law enforcement personnel, or DEA employees.

36.  The DEA Form 7a, Acquisition of Non-Drug Property and Regulatory Seizures is used to report any non-drug property acquired.  DEA uses the DEA-Form 7a to log or maintain a record of the non-drug property.  The form consists of 31 blocks of which Block 4 contains the G-DEP identifier; Block 5, the file title; and Blocks 13 - 18, 20, 21, 28 and 30, the names and signature of a DEA Special Agent, other law enforcement personnel, or DEA employees.

37.  Three miscellaneous DEA Caribbean Field Division documents regarding plaintiff's July 29, 2000 arrest include a Carribean Field Division Arrest Log Database form, a Miranda Rights Warning and Waiver form printed in Spanish, and a page containing two photo "mug shots" of

-14-

plaintiff taken after his arrest. The Caribbean Field Division Arrest Log Database form is an

administrative form that agents of the Caribbean Field Division complete within 48 hours of an

arrest for internal reporting and statistical purposes. The use of the term "Arrest Log" on the form

is merely an administrative label or form nomenclature; this post-arrest form is not a daily or

operational "log" that records investigative or DEA operational activity. The form consists of

basic arrest data, to include the date of arrest; name of defendant; assigned DEA case and GDEP

numbers; case agent; arresting Group/Office; type of arrest; location of arrest; type of drug and

quantity seized; type of seizure; and an assigned administrative control number.

## NO RECORDS OF DAILY OR OTHER ACTIVITY LOGS

38. Items 1 and 4 of plaintiff's April 4, 2005 request sought computerized or other daily logs that

would indicate whether a named agent was present in the San Juan airport on the date of his

arrest. No such "log" type records exist; neither at DEA Headquarters or the DEA Caribbean

Field Division. The absence of activity logs is consistent with DEA policy and practice–there is

no DEA policy or regulation that prescribes the use of police "logs" that record daily operational

activity of agents and such "logs" are not maintained in practice. The primary document that

records or "logs" daily investigative activity is the narrative portion of DEA Form 6, report of

investigation (ROI). Information about the whereabouts of agents during an operation at a

location on a specified date or time--such as the arrest of the plaintiff at the airport--would be

recorded in the DEA Form 6 ROIs that agents used to record such events. Given the above, a "No

Records" response to items 1 and 4 is asserted to the extent that plaintiff's request seeks police log

book-type documents or actual logs that record daily DEA investigative or operational activity of

-15-

an agent. To the extent that plaintiff's request is more liberally construed to seek the DEA

functional equivalent of an activity "log"--the narrative portion of DEA Form 6, ROI--all DEA

ROIs that contain information about his arrest were located and processed as outlined in

paragraphs 20-24 above.

## APPLICATION OF PRIVACY ACT EXEMPTION (j)(2)

39. DEA is component of the Department of Justice whose primary responsibility is the

enforcement of Federal criminal laws related to the illicit trafficking in controlled substances and

chemicals, including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq*.

See 28 C.F.R. § 0.100.

40. The Investigative Reporting and Filing System (IRFS) is a Privacy Act System of Records

that was last reported at 72 Fed. Reg. 3410 and last published in its entirety at 61 Fed. Reg. 54219.

In accordance with the Privacy Act, rules were promulgated, pursuant to 5 U.S.C. §552a(j)(2), to

exempt records contained in IRFS from access. 28 C.F.R. §16.98(c)(3).

41. In accordance with the Privacy Act, 5 U.S.C. §552a(b), except pursuant to a written request

by, or with prior written consent of, the individual to whom the record pertains, unless disclosure

of the record is required by the FOIA, for a routine use or pursuant to the order of a court of

competent jurisdiction, information was withheld by DEA. No routine use existed for, and the

plaintiff did not provide, a release authorization or proof of death for the release of any

information about Special Agent Laboy or other third party information, and no court order has

-16-

been received by DEA. Thus, the release of information is only that which is required by the FOIA.

## RECORDS OR INFORMATION COMPILED FOR LAW ENFORCEMENT PURPOSES

## EXEMPTION (b)(7) THRESHOLD

42. DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, et seq. (hereinafter, the Act) which authorizes DEA to enforce the Act through the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange information in support of drug traffic prevention and control.

43. The records deemed responsive to the plaintiff's FOIA request are criminal investigative records. The records were compiled during criminal law enforcement investigations of the plaintiff and several third parties.

### Exemption (b)(7)(A) - Interference with Enforcement Proceedings

44. 5 U.S.C. § 552 (b)(7)(A) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to interfere with enforcement proceedings. The DEA investigation, file number G5-00-0192, in which information about the plaintiff is maintained is an open investigation.

45. The investigation file number G5-00-0192 remains open, since there is an indicted individual who is a fugitive, and others who are of investigative interest to DEA. The following 51 responsive pages were withheld in their entirety pursuant to exemption (b)(7)(A): pages 4-9; pages 12 and 13; pages15-17; pages 22-26; pages 29-39; page 41; pages 43-61; pages 75-77; and page 81.

46. The undersigned, as part of the CCA litigation and segregability review, reviewed each of the 51 pages cited above. I have been advised by the supervisory agent responsible for the open G5-00-0192 investigation at the Caribbean Field Division that the disclosure of any of the details contained in the pages cited above would reveal the scope, direction, nature and pace of the investigation as well as reveal information that would likely be used in the future prosecution of the fugitive. Disclosure of any details regarding this ongoing investigation could lead to the destruction of evidence. If the information is released, the individual who is an indicted fugitive and others who are of investigative interest in this case could use the information to avoid apprehension, allow them to develop alibis, create factitious defenses or intimidate, harass or harm potential witnesses. Disclosure of techniques and strategies employed in this case could force DEA to abandon current investigative methods and develop new methods which may not be as effective in gathering investigative information. Moreover, the 51 pages contain information about persons who may be suspected of criminal offenses and, therefore, may be targets for investigation. Disclosure of the identities of these persons will certainly interfere with any possibility of successful investigation and may well render effective investigation impossible. Thus, release of any information from these 51 pages could interfere with the ongoing investigation and any eventual criminal proceedings.

-18-

47. The following 32 pages of responsive documents that are not subject to Exemption (b)(7)(A) were processed by DEA:

(a) DEA form 210, Defendant Disposition Report, identifying "Nelson Del Rosario," in block 7 as the defendant with an arrest date of 7/29/2000 in block 20 and a sentence of 151 months of confinement in block 14 (page number 1);

(b) a DEA form 202, Personal History Report (2 pages), prepared July 29, 2000, identifying "Nelson J. Del Rosario" in block 8 as the subject (page numbers 2, 3);

(c) two (2) DEA form "7"s, Report of Drug Property Collected, Purchased or Seized that record the drug evidence seized from the plaintiff on July 29, 2000 (page numbers 10, 11);

(d) five (5) DEA form "7a"s, Acquisition of Non-Drug Property and Regulatory Seizures that record the non-drug evidence seized from the plaintiff on July 29, 2000 (page numbers 14, 18-21);

(e) seven (7) DEA form "6"s, Report of Investigation (ROI) that include the details of the plaintiff's arrest and consent search on July 29, 2000 as well as information about his suppression hearing and guilty verdict at trial (page numbers 27, 28, 40, 42, 62-72, 73, 74, and 82, 83).

(f) three miscellaneous arrest documents from the DEA Caribbean Field Division: (1) a DEA Caribbean Field Division Arrest Log Database form, documenting plaintiffs arrest on July 29, 2000 (page number 78); (2), a Miranda Rights Warning and Waiver form printed in Spanish ("Declaration De Serechos") with the notation "Refused" in the defendant signature block (page number 79); and (3), one page containing two (2) Polaroid-style photograph images of plaintiff taken after his arrest on July 29, 2000 (page number 80).

-19-

These documents directly pertain to the plaintiff's arrest or report on his subsequent criminal case which concluded in 2002; therefore, release would not interfere with the ongoing G5-00-0192 criminal investigation or a prospective enforcement proceeding.

## WITHHOLDING PURSUANT TO FOIA EXEMPTION (b)(2)

48.  5 U.S.C. § 552 (b)(2) exempts from disclosure information relating to the internal rules and practices of any agency. Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, most of the pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug Enforcement Program) codes, NADDIS numbers, and confidential informant numbers. The G-DEP, NADDIS, and confidential informant numbers are part of DEA's internal system of identifying information and individuals.

(a). G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity.

(b). NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA. Each number is unique and is assigned to only one violator within the DEA NADDIS indices. (The NADDIS indices are exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a (j)(2); 28 C.F.R.16.98 (2005). Knowledge of the NADDIS number provides a means of finding out not only drug violator information about the subject but also personal information about himself, relatives and any third parties identifiable with the violator. Thus, Exemption (b)(7)(C) was used in conjunction with (b)(2) to withhold third-party NADDIS numbers.

49.  The release of the G-DEP codes would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings.  Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them, or avoid detection and apprehension, or create alibis for suspected activities.  Disclosure of the codes would, therefore, thwart the Drug Enforcement Administration's investigative and law enforcement efforts.

50.  NADDIS numbers and informant identifier codes are unique and personal to the individual to whom the number applies.  They are assigned by DEA for internal use and there is no public interest in the release of these codes.

51.  Information withheld under Exemption (b)(2) for the 32 pages not subject to Exemption (b)(7)(A) are itemized in the attached *Vaughn* index at Exhibit S.  The 51 pages withheld under Exemption (b)(7)(A) as articulated above also contain G-DEP and NADDIS code information that is withheld under Exemption (b)(2) and is located on page numbers 4, 6, 8, 9, 12, 13, 15-18, 23-26, 29-39, 41, 43-61, and 75-77.

## **Exemption (b)(7)(C) - Invasion of Privacy**

52.  5 U.S.C. § 552 (b)(7)(C) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Many of the documents in the investigative case files contain names and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with the plaintiff.  The individuals, which include third-parties, suspects, criminal associates, non-implicated individuals,

-21-

and law enforcement officers and support personnel, are protected from the disclosure of their identities.

53. In making the determination to withhold this information, the individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities. In this instance, the plaintiff provided no facts to show any public interest for which any potential public interest would outweigh the privacy interests of the individuals. Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.

54. In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue. The public interest in disclosure of the information was determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and Controlled Substance Act, and/or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under exemption (b)(7)C), and release of any information about a third party would constitute an unwarranted invasion of that third party's personal privacy.

55. The identities of DEA Special Agents (including supervisory agents), and other Federal, state/local law enforcement officers were withheld. Releasing their identities and information pertaining to these individuals would place the Special Agents, and other law enforcement officers and personnel in a position that they may suffer undue invasions of privacy, harassment and

humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file.

56. The Special Agents and other law enforcement officers were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of DEA agents or other Federal, state/local law enforcement officers.

57. The identities of government employees, DEA drug evidence custodians, forensic chemists, and laboratory personnel were withheld. Releasing their identities and information pertaining to these individuals would place them in such a position that they may suffer undue invasions of privacy, harassment, and humiliation from disclosure of their identities in a criminal law enforcement investigatory file.

58. Government employees were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Also, release of their identities would constitute an

-23-

unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of government employees.

59.  Information withheld under Exemption (b)(7)(C) for the 32 pages not subject to exemption (b)(7)(A) are itemized in the attached *Vaughn* index at Exhibit S. The 51 pages withheld under Exemption (b)(7)(A) also contain names and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with the plaintiff to include third-parties, suspects, criminal associates, non-implicated individuals, law enforcement officers, and other government employees. In addition to Exemption (b)(7)(A), the names and other identifying information contained in these 51 pages is also withheld under Exemption (b)(7)(C) and is located on page numbers 4-9, 12, 13, 15-18, 23-26, 29-32, 36, 41, 43-61, and 75-77.

### Privacy Glomar-Exemptions (b)(6) and (b)(7)(C)

60.  In similar fashion to Exemption (b)(7)(C) as outlined in paragraph 52 above, 5 U.S.C. § 552 (b)(6) prescribes an exemption for personnel, and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy. To the extent that plaintiff's request seeks information about SA Laboy that could be contained in his personnel records, DEA employs a privacy "Glomar" response under Exemptions (b)(6) and (b)(7)(C). DEA employs the privacy "Glomar" in response to requests for information on agents, employees, or other third parties in order to protect the privacy interests of these individuals. Merely confirming that records about an individual exist in a DEA record system is a disclosure under the Privacy Act

and may have a potentially stigmatizing or embarrassing effect. As a result, simply confirming

that DEA possesses records on an individual, in and of itself, would constitute an unwarranted

violation of an individual's privacy.

61. DEA has found that the privacy "Glomar" response to "neither confirm nor deny" provides

the best protection to those individuals about whom records are sought by third-party FOIA

requesters. The use of the "neither confirm nor deny" is distinct from a "no record" response.

DEA typically uses "no record" as a response where, in fact, a search has been undertaken and no

records could be located based upon a requester's description of the record, the records requested

are not "agency records," or the information falls within the FOIA (c)(1) or (c)(2) Exclusions.

## Confidential Sources and Information Obtained from Confidential Sources
## Exemption (b)(7)(D)

62. The FOIA, 5 U.S.C. § 552 (b)(7)(D) sets forth an exemption for the information compiled for

law enforcement purposes the disclosure of which could reasonably be expected to reveal the

identity of a confidential source and/or information furnished by a confidential source.

## Sources with Implied Confidentiality

63. When it cannot be ascertained that a source was found to have been expressly made a promise

of confidentiality, certain circumstances characteristically may support an inference of

confidentiality, such as the character of the crime being investigated, and the source's relation to

the nature of the crime.

-25-

64. The plaintiff was convicted of conspiracy to distribute and possession with the intent to distribute cocaine and heroin. It is reasonable to infer that any individuals who provided information about the plaintiff or his associates would fear for their safety if their identities or the information they provided were revealed because violence is inherent in the trade in illicit substances, such as cocaine and heroin. Additionally, release of the name of any sources or the information they provided could jeopardize DEA operations, since their cooperation and that of other similarly situated individuals could be needed in the ongoing G5-00-0192 investigation herein or in other future criminal investigations.

65. Information is withheld under Exemption (b)(7)(D) for one page (pg 62) of the 32 pages not subject to (b)(7)(A) withholding as itemized in the attached *Vaughn* declaration at Exhibit S. Confidential source information is also contained in three of the 51 pages withheld in their entirety under Exemption (b)(7)(A) and remain key to the open investigation. Accordingly, the confidential source information contained on pages 55, 58, and 60 are also withheld under exemption (b)(7)(D).

## SAFETY OF LAW ENFORCEMENT PERSONNEL AND OTHER INDIVIDUALS
### Exemption (b)(7)(F)

66. The names and other identifying information of DEA Special Agents (including supervisory agents), other Federal, state/local law enforcement officers, and supporting DEA employees (to include chemists, laboratory personnel, and evidence custodians) are withheld in accordance with 5 U.S.C. § 552 (b)(7)(F). Exemption (b)(7)(F) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.

-26-

67. DEA Special Agents are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations. Moreover, DEA employees who support the agent investigations, such as the chemists, lab personnel, and evidence custodians, are frequently called upon to perform critical functions in support of enforcement efforts.

68. Special Agents routinely approach and associate with violators in a covert capacity. Many of those violators are armed and many have known violent tendencies. It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment, and attempted murder of undercover and other DEA Special Agents. Specifically, death threats have been made against a cooperating individual in one of the cases against plaintiff and his associates; therefore, there is a bona fide expectation of violence associated with the release of information herein given these threats and the fugitive at large. As a result, it can be reasonably anticipated that other law enforcement officers and DEA employees who supported the law enforcement agents in this case would also become targets of similar abuse if they were identified as participants in DEA enforcement operations.

69. In addition, if the names of Special Agents, other law enforcement officers, or supporting DEA employees were released pursuant to the Freedom of Information Act, DEA would be releasing this data to the public realm. DEA considers it to be within the public interest not to disclose the identity of Special Agents so that they may effectively pursue their undercover and investigatory assignments. These assignments are a necessary element in support of DEA's objective -- the suppression of the illicit traffic of narcotic and dangerous drugs. Public disclosure of the identities of investigatory personnel would have a detrimental effect on the successful

-27-

operation of DEA, as well as risk harassment and danger to its agents and supporting law enforcement personnel. This information was also withheld pursuant to Exemption (b)(7)(C).

70. The names and other identifying information of potential witnesses and other third-parties who are not criminal associates of plaintiff are also withheld under Exemption (b)(7)(F). Given the propensity of violence inherent in the trade in illicit substances such as cocaine and heroin, the death threats made against a cooperating individual in one of the cases against plaintiff and his associates, and the pending fugitive, there is a reasonable expectation that the release of identifying information about these individuals would pose a genuine danger to their life or physical safety. This information is also withheld under Exemption (b)(7)(C).

71. Information withheld under Exemption (b)(7)(F) for the 32 pages not subject to Exemption (b)(7)(A) are itemized in the attached *Vaughn* index at Exhibit S. The 51 pages withheld under Exemption (b)(7)(A) also contain names and other identifying information which would reveal the identity of agents, supervisory agents, DEA employees, potential witnesses, and other third parties who are not criminal associates of the plaintiff. In addition to Exemption (b)(7)(A), the names and other identifying information of these individuals contained in the 51 pages is also withheld under exemption (b)(7)(F) and is located on page numbers 4-9, 12, 13, 15-18, 23-26, 29-32, 36, 41, 43-61, and 75-77.

## SEGREGABILITY

72. Pages subject to Exemption (b)(7)(A). As referenced above, pages 4-9; pages 12 and 13; pages15-17; pages 22-26; pages 29-39; page 41; pages 43-61; pages 75-77; and page 81 where withheld in their entirety as part of the open G5-00-0192 investigation. These 51 pages were

-28-

examined to determine whether any reasonably segregable information could be released. After information is withheld pursuant to FOIA Exemptions (b)(2), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(F), only blank pages, pages with only the plaintiff's name and identifying information, the investigative file number, and/or pages with incomprehensible words and phrases would remain. The release of that information would not contribute to the understanding of how DEA or the Governments conducts business. Thus, the pages were withheld in their entirety.

73. Pages not subject to Exemption (b)(7)(A). The 32 pages not subject to Exemption (b)(7)(A) were also examined to determine whether any reasonably segregable information could be released and include pages 1-3, 10, 11, 14, 18-21, 27, 28, 40, 42, 62-74, 78-80, 82, and 83. Page 80 (photos) was released in full. Only page 83 was withheld in its entirety because after withholding information under FOIA Exemptions (b)(2), (b)(7)(C), and (b)(7)(F), only the plaintiff's name and the investigative file number would remain. As such, release would not result in the disclosure of any useful information that would shed light on how DEA or the Government conducts business.

I declare under the penalty of perjury that the foregoing is true and correct.

6/5/08
DATE

Michael G. Seidel, Senior Attorney
Office of Chief Counsel
Administrative Law Section
Drug Enforcement Administration
Washington, D.C. 20537

-29-

# EXHIBIT A

Nelson Jose Del Rosario
Reg.- 19889-069
FCI Loretto
Post Office Box 1000
Loretto, PA 15940-1000

To:
Office of the Administrator
Freedom of Information Section
DRUG ENFORCEMENT ADMINISTRATION
Washington, DC 20537

**ORIGINAL**

Re: Freedom of Information Act,
5 U.S.C. §552 et seq., and
Privacy Act of 1974

United States v. Del Rosario,
00-Crim-0672 (CC)

Dear Sir/Madam:

I am, **NELSON JOSE DEL ROSARIO**, the defendant in the above referenced criminal case. On July 29, 2000, I was arrested in the International Airport "Luis Munoz Marin" in San Juan, Puerto Rico for alleged violation of the Controlled Substance Act.

During a Suppression hearing in the United States District Court of Puerto Rico a DEA supervisor **ELVIN LABOY**, testified that he was the agent which I gave my consent to search my luggage. Agent Laboy was the only government witness at such hearing.

For the forestated, what I am requesting respectfully pursuant to **FOIA** is the follwing information:

1. **copies of police computerized and of daily logs;**

2. **The substance of any oral statements which the agent Laboy alleged that was made by me, whether before or after the indictment in response to an interrogation by any person then known to be a government agent;**

ORIGINAL

[2]

3. The names, assignments and locations of the agents and/or officers present at time of any oral statement referred to in request no. 2 was made, and

4. copies of police computerized and of daily logs, showing that agent Laboy was in fact present at the International Airport "Luis Munoz Marin" in San Juan, Puerto Rico on July 29, 2000.

The information above requested is necessary to enable Mr. Del Rosario adequately to prepare for a collateral attack on his conviction and sentence that were affirmed by the United States Court of Appeals for the First Circuit on Nov. 1, 2004.

It is of paramount importance to obtain the information aforementioned requested in a "timely manner" as commands the FOIA legislation and thank you for your attention and consideration in this matter.

With my most highest regards,


Dated: April 4, 2005        BY: _____
      Loretto, PA                NELSON JOSE DEL ROSARIO


Attached: Certification of Identity.



U.S. Department of Justice                    Certification of Identity **ORIGINAL**

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]    **NELSON JOSE DEL ROSARIO**

Citizenship Status [2] **Legal Resident**    Social Security Number [3] **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**

Current Address  **FCI Loretto, Post Office Box 1000, Loretto, PA 15940-1000**

Date of Birth **June 20, 1965**    Place of Birth **Dominican Republic**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [4]                              Date  **April 4, 2005**

## OPTIONAL:  Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

_____

**Print or Type Name**

[1] Name of individual who is the subject of the record sought.
[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an Alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.
[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
[4] Signature of individual who is the subject of the record sought.

# EXHIBIT B



**U.S. Department of Justice**

Drug Enforcement Administration

---

*Washington, D.C. 20537*

April 22, 2005

Nelson J. Del Rosario
Reg. No. 19889-069
Federal Correctional Institution
P.O. Box 1000
Loretto, PA  15940-1000

Subject of Request: <u>Del Rosario, Nelson J (Copy of July 29, 2000 oral statement made to Elvin Laboy, police</u>
<u>daily logs and the names, assignments and locations of the agents/officers present at the time of his oral</u>
<u>statement</u>

Dear Nelson Del Rosario:

This letter is in response to your recent correspondence seeking information from the Drug Enforcement
Administration (DEA) pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy
Act (PA), 5 U.S.C. § 552a on the above subject. We have reviewed your request and are making the following
determinations:

In accordance with 28 C.F.R. § 16.3 (c), it will be necessary for you to submit a statement which
expresses your intent to satisfy all fees incurred while processing your request. Your request does not qualify
for a waiver of fees. For fee assessment purposes, you have been categorized as an "all other/citizen" requester.
You will be afforded the first two (2) hours of search and the first 100 pages of duplication at no charge. You
will be notified at a later date of any/all applicable fees in which payment is required prior to the release of the
records.

We anticipate that the above adequately addresses your concerns. Until the above requirements are
satisfied, no further action will be initiated on this request. Mail your response to this letter to the following
address:

Drug Enforcement Administration
Freedom of Information Section
Washington, D.C. 20537

If you wish to appeal this response, you must do so within sixty (60) days pursuant to 28 C.F.R. §
16.9. The appeal should be directed to the following address with the envelope marked "FOIA/PA APPEAL".

Co-Director
Office of Information and Privacy
FLAG Building, Suite 570
Washington, D.C. 20530

Sincerely,

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section
Drug Enforcement Administration
Washington, D.C. 20537

# EXHIBIT C

05.0877

Nelson J. Del Rosario
Reg.- 19889-069
FCI Loretto
Post Office Box 1000
Loretto, PA 15940-1000

To:
Drug Enforcement Administration
Freedom of Information Section
Washington, D.C. 20537

Dear Sir/Madam:

This is in response to your letter dated April 22, 2005.

By this means, I am submitting this letter as an statement which I am expressing my agreement to satisfy all fees incurred while your agency is processing my freedom of information requests. See letter from the Department of Justice attached.

Thank you for your attention in this matter.

With my most highest regards,

Dated: April 28, 2005          BY: _____
      Loretto, PA                   NELSON J. DEL ROSARIO

enclosure.

# EXHIBIT D

 

**U.S. Department of Justice**
Drug Enforcement Administration

JUN **1** 0 2005

*Case Number: 05-0877-P*

*Subject of Request: DEL ROSARIO, NELSON JOSE*

NELSON JOSE DEL ROSARIO #19889-069
FCI
P.O. BOX 1000
LORETTO, PA  15940-1000

Dear Nelson Jose Del Rosario:

      The Drug Enforcement Administration (DEA) has received your Freedom of Information/Privacy Act (FOI/PA) request and placed it on a list of requests waiting processing. In order to expedite all requests that require retrieval, processing and duplication of documents, your request will be handled in chronological order based on the date of this letter.

      Your request has been assigned the above number.  Please include this number in any future correspondence to this office regarding this request.

      Please be assured that your request is being handled as equitably as possible.  Upon completion of the processing, you will be notified of all applicable fees, and payment will be required prior to release of any records.  If there are no fees associated with the processing of your request, all documents that can be released will be made available to you at the earliest possible date.

                  Sincerely,

                  Katherine L. Myrick
                  Chief, Operations Unit
                  FOI/Records Management Section

# EXHIBIT E

Nelson Jose Del Rosario
Reg.- 19889-069
FCI Loretto
Post Office Box 1000
Loretto, PA 15940-1000

To:
Ms. Katherine L. Myrick
Chief, Operation Unit
FOI/Records management Section
U.S. DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION
Washington, DC 20537

**ORIGINAL**

Re: Case Number: 05-0877-P

Honorable Ms. Myrick:

On Apr. 4, 2005, I filed with this agency an FOIA petition requesting, among others things, **copies of police computerized and of daily logs, showing that a DEA Agent Elvin Laboy was in fact present at the Internation Airport "Luis Munoz Marin" in San Juan, Puerto Rico on July 29, 2000.** See Exh-A.

On June 10, 2005, I received a letter from the agency stating that my request was placed on a list of requests waiting processing. See Exh-B.

Ms. Myrick, as today is the day, that I have no answer in this matter. Therefore, I come to you respectfully requeting to be inform about the "status" of my FOIA request.

Please, be aware of that the statutory time limit provides by the Section **552(A)(6)(C)(i)** of Title of the **United States Code** which is 20-days had been exceeded enormously in the instant matter.

Ms, Myrick, it is of paramount importance to hear from you as soon as possible you can and thank you for your attention and consideration in this matter.

RESPECTFULLY SUBMITTED,

BY: _____
Dated: Loretto, PA            NELSON JOSE DEL ROSARIO
      Sep. 2, 2005

W/attachments.

ExH-A

Nelson Jose Del Rosario
Reg.- 19889-069
FCI Loretto
Post Office Box 1000
Loretto, PA 15940-1000

7004 1160 0007 1715 6673

To:
Office of the Administrator
Freedom of Information Section
DRUG ENFORCEMENT ADMINISTRATION
Washington, DC 20537



Re: <u>Freedom of Information Act,
5 U.S.C. §552 et seq., and
Privacy Act of 1974</u>

<u>United States v. Del Rosario,
00-Crim-0672 (CC)</u>

Dear Sir/Madam:

I am, **NELSON JOSE DEL ROSARIO**, the defendant in the above referenced criminal case. On July 29, 2000, I was arrested in the International Airport "Luis Munoz Marin" in San Juan, Puerto Rico for alleged violation of the Controlled Substance Act.

During a Suppression hearing in the United States District Court of Puerto Rico a DEA supervisor **ELVIN LABOY**, testified that he was the agent which I gave my consent to search my luggage. Agent laboy was the only government witness at such hearing.

For the forestated, what I am requesting **respectfully** pursuant to **FOIA** is the follwing information:

1. copies of police computerized and of daily logs;

2. The substance of any oral statements which the agent Laboy alleged that was made by **me**, whether before or after the indictment in response to an interrogation by any person then known to be a government agent;



[2]

3. The names, assignments and locations of the agents and/or officers present at time of any oral statement referred to in request no. 2 was made, and

4. copies of police computerized and of daily logs, showing that agent Laboy was in fact present at the International Airport "Luis Munoz Marin" in San Juan, Puerto Rico on July 29, 2000.

The information above requested is necessary to enable Mr. Del Rosario adequately to prepare for a collateral attack on his conviction and sentence that were affirmed by the United States Court of Appeals for the First Circuit on Nov. 1, 2004.

It is of paramount importance to obtain the information aforementioned requested in a "timely manner" as commands the FOIA legislation and thank you for your attention and consideration in this matter.

With my most highest regards,

Dated: April 4, 2005
       Loretto, PA

BY: _____
    NELSON JOSE DEL ROSARIO

Attached: Certification of Identity.

EXH-A

U.S. Department of Justice

**Certification of Identity** 

COPY

---

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]    **NELSON JOSE DEL ROSARIO**

Citizenship Status [2] **Legal Resident**    Social Security Number [3] **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**

Current Address **FCI Loretto, Post Office Box 1000, Loretto, PA 15940-1000**

Date of Birth **June 20, 1965**    Place of Birth **Dominican Republic**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [4] _Nelson J.M.R.S_    Date **April 4, 2005**

---

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

---

### Print or Type Name

[1] Name of individual who is the subject of the record sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an Alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.



**U.S. Department of Justice**
Drug Enforcement Administration

E XH-B

JUN 1 0 2005

*Case Number: 05-0877-P*

*Subject of Request: DEL ROSARIO, NELSON JOSE*

NELSON JOSE DEL ROSARIO #19889-069
FCI
P.O. BOX 1000
**LORETTO, PA** 15940-1000

Dear Nelson Jose Del Rosario:

The Drug Enforcement Administration (**DEA) has received your Free**dom of Information/Privacy Act (FOI/PA) request and placed it on a list of requests waiting processing. **In order to expedite all re**quests that require retrieval, processing and duplication **of documents, your request will be handled** in chronological order based on the date of this letter.

Your request has been assigned the above number. **Please include this** number in any future correspondence to this office regarding this request.

Please be assured that your request **is being handled as equitably as** possible. Upon completion of the processing, you will be notified of all **applicable fees, and payment will be re**quired prior to release of any records. If there are no fees associated with the **processing of your request, all documents** that can be released will be made available to you at the earliest possible date.

Sincerely,

Katherine Myrick

Katherine L. Myrick,
Chief, **Operations Unit**
FOI/Records Management Section

# EXHIBIT F



**U.S. Department of Justice**
Drug Enforcement Administration

---

September 16, 2005

*Case Number: 05-0877-P*

*Subject: DEL ROSARIO, NELSON JOSE – "COPIES OF POLICE COMPUTERIZED AND OF DAILY LOGS, SHOWING THAT A DEA AGENT ELVIN LABOY WAS IN FACT PRESENT AT THE INTERNATIONAL AIRPORT "LUIS MUNOZ MARIN" IN SAN JUAN, PUERTO RICO ON JULY 29, 2000."*

Dear Nelson Jose Del Rosario:

We are in receipt of your recent inquiry regarding the status of your pending Freedom of Information/Privacy Act request.

Due to the large number of requests received by DEA for disclosure of records pursuant to the Acts, and due to the limited resources available to process such requests, DEA has adopted a "first-in, first-out" practice of processing all incoming requests. This policy complies with the decision in, Open America v. Watergate Special Prosecution Force, 547 F.2d 605, (D.C. Cir. 1976), citing 5 U.S.C. 552 (a)(6)(C) and is applied consistently by DEA.

Your request has been placed in chronological order based on the date of receipt and it will be handled as expeditiously as possible when it is assigned for processing. DEA has received many thousands of requests since 1975 and has only departed from this policy in a few instances where the requester was able to establish a compelling public interest, or where the requester was able to demonstrate an exceptional need or urgency.

Please be advised that to fulfill your request as submitted, our office forwarded a search action to our DEA Caribbean Division for a search of responsive records (e.g., daily logs, Special Agent statements, and so forth). We are awaiting a response to our request for a search of the records maintained in that division office. We apologize for the lengthy delay in conducting the preliminary search for records. We anticipate that a response will be received in the very near future. Again, your patience in this matter is appreciated.

Sincerely,

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

# EXHIBIT G

Nelson Jose Del Rosario
Reg.- 19889-069
FCI Loretto
Post Office Box 1000
Loretto, PA 15940-1000

Dated: Oct. 18, 2005

To:
Ms. Katherine L. Myrick
Chief, Operation Unit
FOI/Records Management Section
U.S. DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION
Washington, D.C. 20537



RE: Case Number 05-0877-P

Honorable Ms. Myrick:

Reference is made to the above-mentioned FOIA petition in which I am the Requester for the purpose of this letter only.

In your letter dated Sep. 16, 2005, you stated that: "where a requester is able to demonstrate an exceptional need or urgency" in order to obtain an information requested, you will be able to handle such request expeditiously. **See Attachment.**

For the following reason, I will be able to demonstrate an exceptional need to compel your agency to make an exception in order to provide me the information requested expeditiously, to wit: (1) The Court of Appeals for the First Circuit affirmed my conviction and sentence on Nov. 1, 2004, See **United States v. Del Rosario, 388 F.3d 1 (1st Cir. 2004)**; (2) under The Antiterrorism and Effective Death Penalty Act of 1996, Section 2255(1) imposes one-year statute of limitation to seek relief in federal court through a habeas corpus proceeding. In addition, the First Circuit has explained that a conviction "does become final" **the date on which my time for filing a timely petition for certiorari review to the Supreme Court expires**. See **Derman v. United States**, 298 F.3d 34, 41 (1st Cir. 2002).

On or about Feb. 1, 2005, the date to seek certiorari review expired, therefore, on Feb 1, 2006, the one-year statute of limitation to file a habeas corpus petition will expires.

If I am unable to file my habeas petition by Feb. 1 2006, I will become a statistic for the Department of Justice.

For the foregoing reason, I have show an exceptional need in order to obtain the information requested expeditiously.

**With my most highest regards,**

BY: _____
    NELSON JOSE DEL ROSARIO



**U.S. Department of Justice**
Drug Enforcement Administration

September 16, 2005

*Case Number: 05-0877-P*

*Subject: DEL ROSARIO, NELSON JOSE – "COPIES OF POLICE COMPUTERIZED AND OF DAILY LOGS, SHOWING THAT A DEA AGENT ELVIN LABOY WAS IN FACT PRESENT AT THE INTERNATIONAL AIRPORT "LUIS MUNOZ MARIN" IN SAN JUAN, PUERTO RICO ON JULY 29, 2000."*

Dear Nelson Jose Del Rosario:

We are in receipt of your recent inquiry regarding the status of your pending Freedom of Information/Privacy Act request.

Due to the large number of requests received by DEA for disclosure of records pursuant to the Acts, and due to the limited resources available to process such requests, DEA has adopted a "first-in, first-out" practice of processing all incoming requests. This policy complies with the decision in, Open America v. Watergate Special Prosecution Force, 547 F.2d 605, (D.C. Cir. 1976), citing 5 U.S.C. 552 (a)(6)(C) and is applied consistently by DEA.

Your request has been placed in chronological order based on the date of receipt and it will be handled as expeditiously as possible when it is assigned for processing. DEA has received many thousands of requests since 1975 and has only departed from this policy in a few instances where the requester was able to establish a compelling public interest, or where the requester was able to demonstrate an exceptional need or urgency.

Please be advised that to fulfill your request as submitted, our office forwarded a search action to our DEA Caribbean Division for a search of responsive records (e.g., daily logs, Special Agent statements, and so forth). We are awaiting a response to our request for a search of the records maintained in that division office. We apologize for the lengthy delay in conducting the preliminary search for records. We anticipate that a response will be received in the very near future. Again, your patience in this matter is appreciated.

Sincerely,

Katherine Myrick

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

# EXHIBIT H



**U.S. Department of Justice**
Drug Enforcement Administration



November 17, 2005

*Case Number: 05-0877-P*

*Subject of Request: DEL ROSARIO, NELSON JOSE*

Nelson Jose Del Rosario #19889-069
FCI Loretto
P.O. Box 1000
Loretto, PA  15940-1000

Dear Nelson Jose Del Rosario:

  The Drug Enforcement Administration (DEA) has received your latest response letter dated October 18, 2005, detailing your reason for requesting "expedited treatment." Please be advised that as of the date of this letter, our office has concluded a reasonable search for any responsive records concerning you. As I indicated to you in our status letter dated September 16, 2005, our office forwarded your request to the DEA Caribbean Division for a search of their records concerning you. We also queried the DEA Narcotics and Dangerous Drugs Investigative Indexing System for any investigative records concerning you. Based upon all available information, we do not anticipate any additional delays concerning your request. Again, we thank you for your patience and understanding in this matter

  Please be assured that your request is being handled as equitably as possible. Upon completion of the processing, you will be notified of all applicable fees, and payment will be required prior to release of any records. If there are no fees associated with the processing of your request, all documents that can be released will be made available to you at the earliest possible date.

     Sincerely,

     Katherine L. Myrick
     Chief, Operations Unit
     FOI/Records Management Section

# EXHIBIT I

Dated: Oct. 18, 2005

Nelson Jose Del Rosario
Reg.- 19889-069
FCI Loretto
Post Office Box 1000
Loretto, PA 15940-1000

7004 1160 0007 1715 7267

To:
Ms. Katherine L. Myrick
Chief, Operation Unit
FOI/Records Management Section
U.S. DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION
Washington, D.C. 20537

COPY

"SECOND NOTICE"!

RE: Case Number 05-0877-P

Honorable Ms. Myrick:

Reference is made to the above-mentioned FOIA petition in which I am the Requester for the purpose of this letter only.

In your letter dated Sep. 16, 2005, you stated that: "where a requester is able to demonstrate an exceptional need or urgency" in order to obtain an information requested, you will be able to handle such request expeditiously. **See Attachment.**

For the following reason, I will be able to demonstrate an exceptional need to compel your agency to make an exception in order to provide me the information requested expeditiously, to wit: (1) The Court of Appeals for the First Circuit affirmed my conviction and sentence on Nov. 1, 2004, See **United States v. Del Rosario, 388 F.3d 1 (1st Cir. 2004);** (2) under The Antiterrorism and Effective Death Penalty Act of 1996, Section 2255(1) imposes one-year statute of limitation to seek relief in federal court through a habeas corpus proceeding. In addition, the First Circuit has explained that a conviction "does become final" the date on which my time for filing a timely petition for certiorari review to the Supreme Court expires. See **Derman v. United States,** 298 F.3d 34, 41 (1st Cir. 2002).

On or about Feb. 1, 2005, the date to seek certiorari review expired, therefore, on Feb 1, 2006, the one-year statute of limitation to file a habeas corpus petition will expires.

If I am unable to file my habeas petition by Feb. 1 2006, I will become a statistic for the Department of Justice.

For the foregoing reason, I have show an exceptional need in order to obtain the information requested expeditiously.

With my most highest regards,

BY: _____
    NELSON JOSE DEL ROSARIO



**U.S. Department of Justice**
Drug Enforcement Administration

---

September 16, 2005

*Case Number: 05-0877-P*

*Subject: DEL ROSARIO, NELSON JOSE – "COPIES OF POLICE COMPUTERIZED AND OF DAILY LOGS, SHOWING THAT A DEA AGENT ELVIN LABOY WAS IN FACT PRESENT AT THE INTERNATIONAL AIRPORT "LUIS MUNOZ MARIN" IN SAN JUAN, PUERTO RICO ON JULY 29, 2000."*

Dear Nelson Jose Del Rosario:

We are in receipt of your recent inquiry regarding the status of your pending Freedom of Information/Privacy Act request.

Due to the large number of requests received by DEA for disclosure of records pursuant to the Acts, and due to the limited resources available to process such requests, DEA has adopted a "first-in, first-out" practice of processing all incoming requests. This policy complies with the decision in, <u>Open America</u> v. <u>Watergate Special Prosecution Force</u>, 547 F.2d 605, (D.C. Cir. 1976), citing 5 U.S.C. 552 (a)(6)(C) and is applied consistently by DEA.

Your request has been placed in chronological order based on the date of receipt and it will be handled as expeditiously as possible when it is assigned for processing. DEA has received many thousands of requests since 1975 and has only departed from this policy in a few instances where the requester was able to establish a compelling public interest, or where the requester was able to demonstrate an exceptional need or urgency.

Please be advised that to fulfill your request as submitted, our office forwarded a search action to our DEA Caribbean Division for a search of responsive records (e.g., daily logs, Special Agent statements, and so forth). We are awaiting a response to our request for a search of the records maintained in that division office. We apologize for the lengthy delay in conducting the preliminary search for records. We anticipate that a response will be received in the very near future. Again, your patience in this matter is appreciated.

Sincerely,

*Katherine Myrick*

**Katherine L.** Myrick
**Chief, Operations** Unit
**FOI/Records** Management Section

# EXHIBIT J



**U.S. Department of Justice**
Drug Enforcement Administration

JAN 1 3 2006

Washington, D.C. 20537

Case Number: 05-0877-P

Subject: DEL ROSARIO, NELSON JOSE

NELSON JOSE DEL ROSARIO
P.O. BOX 1000
LORETTO, PA 15940-1000

Dear NELSON JOSE DEL ROSARIO:

Your Freedom of Information/Privacy Act request seeking information from the Drug Enforcement Administration has been processed. Before DEA can confirm or deny the existence of any records pertaining to S/A Elvin Laboy, an original notarized authorization, (privacy waiver by S/A Laboy) must be received. The consent from S/A Laboy permits the DEA to release personal information from its files. Without the consent, the release of documents, or confirmation of the existence of any records pertaining to S/A Laboy would constitute an unwarranted invasion of his personal privacy.

The processing of your request identified certain materials that will be released to you. Portions not released are being withheld pursuant to the Freedom of Information Act, 5 U.S.C. 552, and/or the Privacy Act, 5 U.S.C. 552a. Please refer to the list enclosed with this letter that identifies the authority for withholding the deleted material, which is indicated by a mark appearing in the block next to the exemption. An additional enclosure with this letter explains these exemptions in more detail. The documents are being forwarded to you with this letter.

If you wish to appeal any denial of your request, you may do so within sixty (60) days pursuant to 28 C.F.R. 16.9. The appeal should be sent to the following address, with the envelope marked "FOIA Appeal":

> CO-DIRECTOR
> OFFICE OF INFORMATION AND PRIVACY
> FLAG BUILDING, SUITE 570
> WASHINGTON, D.C. 20530

Sincerely,

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

Enclosure

6-7
#95a

Number of pages withheld:    58

Number of pages released:    23

Number of pages referred:    0

**APPLICABLE SECTIONS OF THE FREEDOM OF INFORMATION AND/OR PRIVACY ACT:**

| Freedom of Information Act 5 U.S.C. 552 | | | Privacy Act 5 U.S.C. 552a | |
|---|---|---|---|---|
| [ ] (b)(1) | [ ] (b)(5) | [X] (b)(7)(C) | [ ] (d)(5) | [ ] (k)(2) |
| [X] (b)(2) | [ ] (b)(6) | [ ] (b)(7)(D) | [X] (j)(2) | [ ] (k)(5) |
| [ ] (b)(3) | [X] (b)(7)(A) | [ ] (b)(7)(E) | [ ] (k)(1) | [ ] (k)(6) |
| [ ] (b)(4) | [ ] (b)(7)(B) | [X] (b)(7)(F) | | |

FREEDOM OF INFORMATION ACT
SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  Information which is currently and properly classified pursuant to Executive Order in the interest of the national defense or foreign policy.

(b)(2)  Materials related solely to the internal rules and practices of DEA.

(b)(3)  Information specifically exempted from disclosure by another federal statute.

(b)(4)  Privileged or confidential information obtained from a person, usually involving commercial or financial matters.

(b)(5)  Inter-agency or intra-agency documents which are subject to a privilege, such as documents the disclosure of which would have an inhibitive effect upon the development of policy and administrative direction, or which represent the work product of an attorney, or which reflect confidential communications between a client and an attorney.

(b)(6)  Materials contained in sensitive records such as personnel or medical files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

(b)(7)  Records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement  proceedings; (B) would deprive a person of a right to a fair trial or an impartial adjudication; (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy; (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis; and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source; (E) would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

PRIVACY ACT
SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  Materials compiled in reasonable anticipation of a civil action or proceeding.

(j)(2)  Material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals.

(k)(1)  Information which is currently and properly classified pursuant to Executive Order in the interest of the national defense or foreign policy.

(k)(2)  Material compiled during civil investigations for law enforcement purposes.

(k)(5)  Investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to an express promise that his identity would be held in confidence, or pursuant to an implied promise of confidentiality if such information was furnished prior to September 27, 1975.

(k)(6)  The substance of tests used to determine individual qualifications for appointment or promotion in Federal Government Service.

FREEDOM OF INFORMATION ACT
SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  Information which is currently and properly classified pursuant to Executive Order in the interest of the national defense or foreign policy.

(b)(2)  Materials related solely to the internal rules and practices of DEA.

(b)(3)  Information specifically exempted from disclosure by another federal statute.

(b)(4)  Privileged or confidential information obtained from a person, usually involving commercial or financial matters.

(b)(5)  Inter-agency or intra-agency documents which are subject to a privilege, such as documents the disclosure of which would have an inhibitive effect upon the development of policy and administrative direction, or which represent the work product of an attorney, or which reflect confidential communications between a client and an attorney.

(b)(6)  Materials contained in sensitive records such as personnel or medical files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

(b)(7)  Records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement  proceedings; (B) would deprive a person of a right to a fair trial or an impartial adjudication; (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy; (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis; and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source; (E) would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

PRIVACY ACT
SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  Materials compiled in reasonable anticipation of a civil action or proceeding.

(j)(2)  Material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals.

(k)(1)  Information which is currently and properly classified pursuant to Executive Order in the interest of the national defense or foreign policy.

(k)(2)  Material compiled during civil investigations for law enforcement purposes.

(k)(5)  Investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to an express promise that his identity would be held in confidence, or pursuant to an implied promise of confidentiality if such information was furnished prior to September 27, 1975.

(k)(6)  The substance of tests used to determine individual qualifications for appointment or promotion in Federal Government Service.

# EXHIBIT K

rec'd 2-6-06

ORIGINAL 06-1159    FOIA
A
DEA

Nelson Jose Del Rosario
Reg.- 19889-069
FCI Loretto
Post Office Box 1000
Loretto, PA 15940-1000

To:
Co-Director
OFFICE OF INFORMATION AND PRIVACY
Flag Building, Suite-570
Washington, D.C. 20530

RE: 05-0877-P

==========================================

***** FOIA Appeal *****

==========================================

TO THE CO-DIRECTOR:

This is an appeal under the **Freedom of Information Act**(FOIA), 5 U.S.C. §552 et seq. On April 4, 2005, Del Rosario made an FOIA request to the Drug Enforcement Administration for, among others things, "Copies of Police Computarized and of Daily Logs Showing that Agent Elvin Laboy was in Fact Present at the International Airport "Luis Munoz Marin" in San Juan, Puerto Rico on July 29, 2000."

On Jan. 13, 2006, the Drug Enforcement Administration denied Del Rosario request because

> "[B]efore DEA can confirm or deny the existence of any records pertaining to S/A Elvin Laboy, an original notarized authorization,(privacy waiver by S/A Laboy) must be received. The consent from S/A Laboy permits the DEA to re-lease personal information from its files. Without the consent, the rele-ase of documents, or confirmation of the existence of any records pertain-ning to S/A Laboy would constitute an unwarranted invasion of his personal privacy."

See Attachments.

OFFICE OF INFORMATION
AND PRIVACY

FEB 0 6 2006

RECEIVED

[2]

Please be informed that Del Rosario considers the requested material clearly releasable under FOIA and considers the DEA's response to be baseless for the following reasons:

First, The DEA responded on Jan. 13, 2006, denying Del Rosario requests with a "Glomar" response that neither confirmed nor denied the existence of the Agent Laboy's daily logs. See Wolf v. Central Inteligence Agency, 357 F.Supp. 2d 112, 114 (D.D.C. 2004). However, this kind of response is appropriate when the existence or nonexistence of the requested records is itself a classified fact. Id. 114, n.1 (citations omitted).

Here, by the way of illustration, Agent Laboy's daily logs at issue did not fall within § 552a(j)(2)(B) as they were compiled for "administrative" rather than "criminal" investigative purpose. See Von Tempske v. HHS, 2 Gov't Disclosure Serv. (P-H) ¶ 82,091 at 82,385 (W.D.Mo. Nov. 11, 1981)(quoted from U.S.Dept. of Justice, Office of Information and Privacy, Freedom of Information Act Guide & Privacy Act Overview, May 2000 Edition, Pgs. 804-805. The daily logs are not a classified fact!

Second, Del Rosario is entitled to access Agent Laboy's daily logs where there is a suggestion that those daily logs reports actually contains information that can be used for impeachment purpose. See United States v. Andrus, 775 F.2d 825 (7th cir. 1985).

For the forestated, it is truism, that Agent Laboy's daily logs reports will shows whether or not he, in fact, was present at the Internation Airport "Luis Munoz Marin" in San Juan, Puerto Rico on July 29, 2000.

Agent Laboy cannot "shield" behind the Freedom of Information Act and Privacy Act of 1974, in order to avoid the release of the daily logs reports, when such official documentation can be used for impeach his credibility.

Finally, such dialy logs reports, therefore, are material evidence that could affect Agent Laboy's credibility and such reports are an essential element of Del Rosario's defense.

Del Rosario expects that upon reconsideration, you will reverse the decision to deny his requests. However, if you do deny this appeal, Del Rosario intends to file a lawsuit to compel disclosure.

RESPECTFULLY SUBMITTED,

Dated: Loretto, PA       BY: _____
       Feb. 1, 2006           NELSON JOSE DEL ROSARIO



Nelson Jose Del Rosario
Reg.- 19889-069
FCI Loretto
Post Office Box 1000
Loretto, PA 15940-1000

7004 1160 0007 1715 6673

To:
Office of the Administrator
Freedom of Information Section
DRUG ENFORCEMENT ADMINISTRATION
Washington, DC 20537



Re: Freedom of Information Act,
5 U.S.C. §552 et seq., and
Privacy Act of 1974

United States v. Del Rosario,
00-Crim-0672 (CC)

Dear Sir/Madam:

I am, NELSON JOSE DEL ROSARIO, the defendant in the above referenced criminal case. On July 29, 2000, I was arrested in the International Airport "Luis Munoz Marin" in San Juan, Puerto Rico for alleged violation of the Controlled Substance Act.

During a Suppression hearing in the United States District Court of Puerto Rico a DEA supervisor ELVIN LABOY, testified that he was the agent which I gave my consent to search my luggage. Agent Laboy was the only government witness at such hearing.

For the forestated, what I am requesting respectfully pursuant to FOIA is the follwing information:

1. copies of police computerized and of daily logs;

2. The substance of any oral statements which the agent Laboy alleged that was made by me, whether before or after the indictment in response to an interrogation by any person then known to be a government agent;



[2]

3. The names, assignments and locations of the agents and/or officers present at time of any oral statement referred to in request no. 2 was made, and

4. copies of police computerized and of daily logs, showing that agent Laboy was in fact present at the International Airport "Luis Munoz Marin" in San Juan, Puerto Rico on July 29, 2000.

The information above requested is necessary to enable Mr. Del Rosario adequately to prepare for a collateral attack on his conviction and sentence that were affirmed by the United States Court of Appeals for the First Circuit on Nov. 1, 2004.

It is of paramount importance to obtain the information aforementioned requested in a "timely manner" as commands the FOIA legislation and thank you for your attention and consideration in this matter.

With my most highest regards,


Dated: April 4, 2005            BY: _____
       Loretto, PA                  NELSON JOSE DEL ROSARIO

Attached: Certification of Identity.

U.S. Department of Justice

Certification of Identity 

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]   **NELSON JOSE DEL ROSARIO**

Citizenship Status [2] **Legal Resident**    Social Security Number [3] **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**

Current Address **FCI Loretto, Post Office Box 1000, Loretto, PA 15940-1000**

Date of Birth **June 20, 1965**    Place of Birth **Dominican Republic**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [4]                              Date **April 4, 2005**

---

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

### Print or Type Name

[1] Name of individual who is the subject of the record sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an Alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.



**U.S. Department of Justice**
Drug Enforcement Administration

JAN 1 3 2006

Washington, D.C. 20537

Case Number: 05-0877-P

Subject: DEL ROSARIO, NELSON JOSE

NELSON JOSE DEL ROSARIO
P.O. BOX 1000
LORETTO, PA 15940-1000

Dear NELSON JOSE DEL ROSARIO:

Your Freedom of Information/Privacy Act request seeking information from the Drug Enforcement Administration has been processed. Before DEA can confirm or deny the existence of any records pertaining to S/A Elvin Laboy, an original notarized authorization, (privacy waiver by S/A Laboy) must be received. The consent from S/A Laboy permits the DEA to release personal information from its files. Without the consent, the release of documents, or confirmation of the existence of any records pertaining to S/A Laboy would constitute an unwarranted invasion of his personal privacy.

The processing of your request identified certain materials that will be released to you. Portions not released are being withheld pursuant to the Freedom of Information Act, 5 U.S.C. 552, and/or the Privacy Act, 5 U.S.C. 552a. Please refer to the list enclosed with this letter that identifies the authority for withholding the deleted material, which is indicated by a mark appearing in the block next to the exemption. An additional enclosure with this letter explains these exemptions in more detail. The documents are being forwarded to you with this letter.

If you wish to appeal any denial of your request, you may do so within sixty (60) days pursuant to 28 C.F.R. 16.9. The appeal should be sent to the following address, with the envelope marked "FOIA Appeal":

CO-DIRECTOR
OFFICE OF INFORMATION AND PRIVACY
FLAG BUILDING, SUITE 570
WASHINGTON, D.C. 20530

Sincerely,

*Katherine Myrick*

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

Enclosure

Number of pages withheld:    58

Number of pages released:    23

Number of pages referred:    0

**APPLICABLE SECTIONS OF THE FREEDOM OF INFORMATION AND/OR PRIVACY ACT:**

| Freedom of Information Act<br>5 U.S.C. 552 | | | Privacy Act<br>5 U.S.C. 552a | |
|---|---|---|---|---|
| [ ] (b)(1) | [ ] (b)(5) | [X] (b)(7)(C) | [ ] (d)(5) | [ ] (k)(2) |
| [X] (b)(2) | [ ] (b)(6) | [ ] (b)(7)(D) | [X] (j)(2) | [ ] (k)(5) |
| [ ] (b)(3) | [X] (b)(7)(A) | [ ] (b)(7)(E) | [ ] (k)(1) | [ ] (k)(6) |
| [ ] (b)(4) | [ ] (b)(7)(B) | [X] (b)(7)(F) | | |

# EXHIBIT L

 

**U.S. Department of Justice**

Office of Information and Privacy

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

FEB 1 7 2006

Mr. Nelson Jose Del Rosario
Register No. 19889-069
Federal Correctional Institution
P.O. Box 1000
Loretto, PA 15940-1000

      Re: Request No. 05-0877-P

Dear Mr. Del Rosario:

      This is to advise you that your administrative appeal from the action of the Drug Enforcement Administration was received by this Office on February 6, 2006.

      The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **06-1159**. Please mention this number in any future correspondence to this Office regarding this matter.

      We will notify you of the decision on your appeal as soon as we can. We regret the necessity of this delay and appreciate your continued patience.

                  Sincerely,

                  Priscilla Jones
                  Chief, Administrative Staff

2006 FEB 17 PM 4: 25

OPERATIONS UNIT
SARO



DEA

# EXHIBIT M





**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

**MAR - 6 2007**

Mr. Nelson Jose Del Rosario
Register No. 19889-069
Federal Correctional Institution          Re:    Appeal No. 06-1159
Post Office Box 1000                               Request No. 05-0877-P
Loretto, PA  15940-1000                           JTR:SRO

Dear Mr. Del Rosario:

    You appealed from the action of the Drug Enforcement Administration (DEA) on your request for access to certain records pertaining to your arrest at an airport in San Juan, Puerto Rico on July 29, 2000.  I note that you have limited your appeal to your request for access to logs that you allege demonstrate that a particular DEA Special Agent was present at the time of your arrest.

    After carefully considering your appeal, I am affirming DEA's action in refusing to confirm or deny the existence of any records responsive to this portion of your request.  Without consent, proof of death, official acknowledgment of an investigation, or an overriding public interest, confirming or denying the existence of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy.  <u>See</u> 5 U.S.C. § 552(b)(7)(C).

    If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

               Sincerely,

               Janice Galli McLeod
               Associate Director

# EXHIBIT N

Nelson Jose Del Rosario
Reg. No. 19889-069
Unit A Pod 4
555 I-Cornell Drive
Philipsburg, PA 16866

August 21, 2007

Freedom Of Information Operation Unit
Drug Enforcement Administration
Department of Justice
700 Army Navy Drive
Arlington, VA 22202

Dear Sir/Maddam:

Herein is a copy I sent you on May 8, 2007, requesting for a copy of all files, records and any other document in the possession of the Department of Justice.

So far I have not receive any response concerning that letter. Since this documents are very important, I therefore need you to send them to me.

I anxiously await your reply to this crucial matter and your undivided attention. Thank you for your assistance.

Sincerely,

Nelson Jose Del Rosario

PS: Attached are letters dated May 8, 2007.

CC: File

NELSON JOSE DEL ROSARIO
Reg. No:19889-069
FCI Loretto
P.O. Box 1000
Loretto, PA    15940

May 8, 2007

Freedom Of Information Operations Unit
Drug Enforcement Administration
Department Of Justice, 700 Army Navy Drive
Arlington, VA    22202

Re: Request No:05-0877-P
Appeal NO:06-1159

Dear Sir/Maddam:

Under the provision of the Freedom of Information Act, 5 U.S.C.
§ 552, I am requesting a copy of all files, records and any other
docments in the possession of the Department of Justice pertaining to
any and all documents bearing my name.  The documents pertinent to
this request are believed to be in the possession of the United States
Attorney's Office and in the Office of DEA for the District of Puerto
Rico.

The documents requested are the DEA dayli activity Log for Drug
Enforcement Agent (DEA) Elvin Laboy in San Juan, Puerto Rico on July
29, 2000.

If there are any fees for searching for, or copying the records I
have requested, please inform me before you fill the request.  As you
know, the (FOIA) permits you to reduce or waive fees when the release
of the information is considered as "primarily benefitting the public."
i believe that this request fits that category, and, therefore, I ask
that you waive any fees.  If all or any part of this request is
denied, please, release the specific exemption(s) that you think
justifies your refusal to release the information, and inform me of the
appeal procedures available to me under the law.

Thank yoy very much in advance for your kind assistance in this
matter, and I would apprciate you hadnling this request as expeditiosly
as possible and as the lasw stipulates.  Attached hereto, please find
a copy of a Certificate of Identity in support of this request.

VERY TRULY YOURS,

Nelson Jose Del Rosario

U.S. Department of Justice                    Certification of Identity                    

Privacy Act Statement. In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]  _Nelson Jose Del Rosario Severino_____

Citizenship Status [2] _Dominican_____  Social Security Number [3] _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_____

Current Address _P.O. Box 1000, Loretto, PA    15940_____

Date of Birth _June 20, 1965_____  Place of Birth _Dominican Republic_____

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than \$10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than \$5,000.

Signature [4] _____  Date _March 20, 2007____

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

N/A

### Print or Type Name

[1] Name of individual who is the subject of the record sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an Alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

FORM APPROVED OMB NO. 1103-0016
EXPIRES 2/29/04

FORM DOJ-361
APR.01

# EXHIBIT O

NELSON JOSE DEL ROSARIO
REG. NO:19889-69
UNIT. A POD. 4
M.V.C.C.
555 I-CORNELL DRIVE
PHILISBURG, PA. 16866

october 4th, 2007

FREEDOM OF INFORMATION OPERATIONS UNIT
DRUG ENFORCEMENT ADMINISTRATION
DEPAETMENT OF JUSTICE, 700 Army Navy Drive
Arlington, VA 22202

RE:    REQUEST NO. 05-0877-P
APPEAL NO:06-1159

DEAR SIR / maddam

      On May 8, 2007, I sent a letter to your office requesting
the daily activity log of Drug Enforcment Agent (DEA) Elvin Laboy,
in San Juan, Puerto Rico on July 29, 2000. As of yet, I have not
received any response concerning my petition.

      It is very importnat that you send me the above information
that I have requested as soon as time permits. I will appreciate
your cooperation in this very important matter.

      Herein, attached a copy of the above mentioned letter
I have sent on May 8, 2007.

Sincerely. Yours,

Nelson Oel-Rosario

NELSON JOSE DEL ROSARIO
Reg. No:19889-069
FCI Loretto
P.O. Box 1000
Loretto, PA    15940
(A-4)

May 8, 2007

Freedom Of Information Operations Unit
Drug Enforcement Administration
Department Of Justice, 700 Army Navy Drive
Arlington, VA    22202

Re: Request No:05-0877-P
Appeal NO:06-1159

Dear Sir/Maddam:

       Under the provision of the Freedom of Information Act, 5 U.S.C.
§ 552, I am requesting a copy of all files, records and any other
docments in the possession of the Department of Justice pertaining to
any and all documents bearing my name.   The documents pertinent to
this request are believed to be in the possession of the United States
Attorney's Office and in the Office of DEA for the District of Puerto
Rico.

       The documents requested are the DEA dayli activity Log for Drug
Enforcement Agent (DEA) Elvin Laboy in San Juan, Puerto Rico on July
29, 2000.

       If there are any fees for searching for, or copying the records I
have requested, please inform me before you fill the request.   As you
know, the (FOIA) permits you to reduce or waive fees when the release
of the information is considered as "primarily benefitting the public."
i believe that this request fits that category, and, therefore, I ask
that you waive any fees.   If all or any part of this request is
denied, please, release the specific exemption(s) that you think
justifies your refusal to release the information, and inform me of the
appeal procedures available to me under the law.

       Thank yoy very much in advance for your kind assistance in this
matter, and I would apprciate you hadnling this request as expeditiosly
as possible and as the lasw stipulates.   Attached hereto, please find
a copy of a Certificate of Identity in support of this request.

                                    VERY TRULY YOURS,

                                    Nelson Jose Del Rosario

# EXHIBIT P



OCT 1 0 2007

**U.S. Dep\_\_\_ment of Justice**
Drug Enforcement Administration

Washington, D.C. 20537

Case Number: 05-0877-P

Subject: DEL ROSARIO, NELSON JOSE

Nelson Jose Del Rosario
555 I-Cornell Drive
Philipsburg, PA 16866

Dear Nelson Jose Del Rosario:

This letter is in response to your letter dated August 21, 2007, to the Drug Enforcement Administration regarding your appeal number 06-1159.

Enclosed is a copy of the letter dated March 6, 2007 from Janice Galli McLeod, Associate Director of the Office of Information and Privacy (OIP), affirming DEA's action. No further action will be taken regarding this request.

Sincerely,

*Katherine A. M*

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

Enclosure

#9    #95

# EXHIBIT Q



**U.S. Department of Justice**

Drug Enforcement Administration

NOV – 7 2007

Washington, D.C. 20537

Case Number: 05-0877-P

Subject: DEL ROSARIO, NELSON JOSE

Nelson Jose Del Rosario
555 l-Cornell Drive
Philipsburg, PA 16866

Dear Nelson Jose Del Rosario:

This letter is in response to your letter dated October 4, 2007, to the Drug Enforcement Administration regarding your appeal number 06-1159.

Enclosed is a copy of the letter dated March 6, 2007 from Janice Galli McLeod, Associate Director of the Office of Information and Privacy (OIP), affirming DEA's action. No further action will be taken regarding this request.

Sincerely,

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

Enclosure

9  #95

# EXHIBIT R



**U. S. Department of Justice**
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

*www.dea.gov*

APR   7 2008

Mr. Nelson Del Rosario
#19889-069
FCI Loretto
P.O. Box 1000
Loretto, PA 15940-1000

Re: *Nelson Del Rosario v. Department of Justice, et al.,* CA No. 08-0079 JDB

Dear Mr. Del Rosario:

Enclosed please find portions of seven (7) pages and one (1) page in its entirety, in further response to your Freedom of Information Privacy Act/Request dated April 4, 2005, to the Drug Enforcement Administration (DEA), that is the subject of the above entitled litigation. One (1) page is withheld in its entirety.

Based on your request, DEA has located two (2) additional pages of responsive material of which 1 page was withheld in its entirety. Pages 28, 40, 42, 72, 78, 79, and 80 were previously withheld in their entirety. Information is withheld pursuant to Privacy Act (PA), 5 U.S.C. § 552a, Exemption (j)(2), and the Freedom of Information (FOIA), 5 U.S.C. § 552, Exemptions (b)(2), (b)(7)(C), and (b)(7)(F).

Sincerely,

Michael G. Seidel
Senior Attorney
Administrative Law Section

CCA Chron
CCA File
Document name:H:MyDocuments:lwassom/correspondence/delrosarioltr.wpd/4/7/2008

# EXHIBIT S

**PAGE ITEMIZATION**

**PAGE NUMBER:**    1
**DOCUMENT TYPE:** DEFENDANT DISPOSITION REPORT (DEA 210)

**DATE:**    SEPTEMBER 18, 2002

                                              ( X ) **RELEASED**
                                              (   ) **WITHHELD**

      **TO:** CRIMINAL INVESTIGATIVE FILE

    **FROM:** DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 5 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP IDENTIFIER |
| BLOCK 6 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |
| BLOCKS 23, 24 & 25 | NAMES & SIGNATURES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & SIGNATURES OF SPECIAL AGENTS |

PAGE ITEMIZATION

**PAGE NUMBER:**   2 - 3
**DOCUMENT TYPE:**   PERSONAL HISTORY REPORT (DEA 202)

**DATE:**    JULY 29, 2000

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**   CRIMINAL INVESTIGATIVE FILE

**FROM:**   DEA SPECIAL AGENT

**PURPOSE:**   FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCKS 1, 42a,43a | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) | NAMES AND INFORMATION RELATED TO A THIRD-PARTY |
| BLOCKS 5, 45, 46 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP QUALITATIVE & QUANTITATIVE CRITERIA |
| BLOCKS 68, 69,71,72, 74,75 | NAMES AND SIGNATURES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & SIGNATURES OF SPECIAL AGENTS |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   10
**DOCUMENT TYPE:** REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED (DEA 7)

**DATE:**   AUGUST 10, 2000

( ˣ ) **RELEASED**
(   ) **WITHHELD**

**TO:**   CRIMINAL INVESTIGATIVE FILE

**FROM:**   DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 3 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 16-18, 20, 21, 23, 24, 34, 35, 37, 38 | NAMES, SIGNATURES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & SIGNATURES & INITIALS OF SPECIAL AGENTS |
| BLOCK 5 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |

**PAGE ITEMIZATION**


**PAGE NUMBER:**  11
**DOCUMENT TYPE:**  REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED
               (DEA 7)
**DATE:**  AUGUST 10, 2000

                                        **(** X **) RELEASED**
                                        **(    ) WITHHELD**

      **TO:**  CRIMINAL INVESTIGATIVE FILE

    **FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 3 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 16-18, 20, 21, 23, 24, 34, 35, 37, 38 | NAMES & SIGNATURES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & SIGNATURES OF SPECIAL AGENTS & SUPPORTING PERSONNEL |
| BLOCK 5 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   14
**DOCUMENT TYPE:** ACQUISITION OF NON-DRUG PROPERTY/REGULATORY SEIZURES (DEA 7A)

**DATE:**   AUGUST 1, 2000

**( X ) RELEASED**
**(   ) WITHHELD**

   **TO:**  CRIMINAL INVESTIGATIVE FILE

 **FROM:**  DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 13 - 15 | NAMES OF LAW ENF.  PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| BLOCK 5 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |

**PAGE ITEMIZATION**

**PAGE NUMBER:** 18 - 21
**DOCUMENT TYPE:** ACQUISITION OF NON-DRUG PROPERTY/REGULATORY SEIZURES (DEA 7A)

**DATE:**    AUGUST 3, 2000

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 13-15 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| BLOCK 5 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   27
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6) PAGE 1 OF 1

**DATE:**     SEPTEMBER 23, 2002

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 6 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 12, & 14; DETAILS: PARA 1 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  28
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)

**DATE:**    MAY 1, 2002

( X ) **RELEASED**
(   ) **WITHHELD**

   **TO:**  CRIMINAL INVESTIGATIVE FILE

  **FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5,12 & 14; DETAILS: PARA 2; BOTTOM LEFT MARGIN | NAMES, SIGNATURES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES, SIGNATURES & INITIALS OF SPECIAL AGENTS, LAW ENF. OFFICERS & SUPPORT PERSONNEL |
| BLOCKS 6, 10; DETAILS: PARA 1, 3,4; INDEXING SECTION, PARA 2 | THIRD-PARTY NAMES and IDENTIFIERS | (b)(7)(C) | NAMES AND IDENTIFIERS OF THIRD-PARTIES |
| INDEXING SECTION | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | NADDIS IDENTIFIER CODES |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   40
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)

**DATE:**    JANUARY 31, 2002

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**   CRIMINAL INVESTIGATIVE FILE

**FROM:**   DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|-----------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 12 & 14; DETAILS: PARA 2; BOTTOM LEFT MARGIN | NAMES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & INITIALS OF SPECIAL AGENTS |
| BLOCK 6 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF INDIVIDUAL |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  42
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)

**DATE:**  OCTOBER 22, 2001

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 9,12 & 14; DETAILS: PARA 1,2; BOTTOM LEFT MARGIN | NAMES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & INITIALS OF SPECIAL AGENTS |
| BLOCKS 6; DETAILS: PARA 1 | THIRD-PARTY NAMES and INFORMATION | (b)(7)(C) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  62
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6) PAGE 1 OF 11

**DATE:**  AUGUST 3, 2000

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5,9,12 & 14; BOTTOM LEFT MARGIN | NAMES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & INITIALS OF SPECIAL AGENTS |
| BLOCKS 6, 10; SYNOPSIS; DETAILS: PARA 1 | THIRD-PARTY NAMES and IDENTIFIERS | (b)(7)(C) | NAMES OF AND INFORMATION RELATED TO THIRD PARTIES |
| DETAILS: PARA 1,2 | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) | IDENTITY OF CONFIDENTIAL SOURCE |
|  | INFORMATION FROM A CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION PROVIDED BY CONFIDENTIAL SOURCE |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  63 - 66
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6) PAGES 2 - 5 OF 11

**DATE:**  AUGUST 3, 2000

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 2: PARA 3-6; PAGE 3: PARA 6-11; PAGE 4: PARA 12-15; PAGE 5: PARA 16-19 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| PAGES 2-5: BLOCK 3; PARA 4-6, 8-19 | THIRD-PARTY NAMES, IDENTIFIERS AND INFORMATION | (b)(7)(C) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  67 - 72
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)(PAGES 6 - 11 OF 11)

**DATE:**   AUGUST 3, 2000

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 6: PARA 19, 20; CUSTODY OF EVIDENCE, DRUG EVIDENCE: PARA 1; PAGE 7: PARA 2-4; NON-DRUG EVIDENCE: PARA 1; PAGE 8: PARA 1-5; PAGE 9: PARA 6-9; PAGE 10: PARA 10-14; PAGE 11: PARA 4 | NAMES OF LAW ENF.  PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| PAGES 6-11: BLOCK 3; PARA 19; DRUG EVIDENCE: PARA 1-2; NON-DRUG EVIDENCE: PARA 1,2, 4-6, 11-14; PAGE 11: INDEXING SECTION | THIRD-PARTY NAMES, IDENTIFIERS AND INFORMATION | (b)(7)(C) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| PAGE 11:INDEXING SECTION | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | NADDIS IDENTIFIER CODES |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  73 - 74
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6 & 6a) PAGES 1 AND 2 OF 2

**DATE:**  AUGUST 1, 2000

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| PAGE 1: BLOCK 4; PAGE 2: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5,9, 12 & 14; BOTTOM LEFT MARGIN; DETAILS: PARA 1-4; PAGE 2: PARA 4,5 | NAMES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & INITIALS OF SPECIAL AGENTS |
| PAGE 1: BLOCK 6; DETAILS: PARA 1; PAGE 2: BLOCK 3 | THIRD-PARTY NAMES | (b)(7)(C) | NAMES OF INDIVIDUALS |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  78
**DOCUMENT TYPE:** DEA CARIBBEAN FIELD DIVISION ARREST LOG DATABASE FORM

**DATE:**   JULY 29, 2000

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| DEA CASE # AND GDEP: | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| SALUTATION; BOTTOM OF PAGE: | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | INTERNAL TELEPHONE AND FAX NUMBERS |
| CASE AGENT | NAMES OF ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAME OF SPECIAL AGENT |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   79
**DOCUMENT TYPE:** DECLARATION DE SERECHOS (*MIRANDA* RIGHTS)

**DATE:**     SEPTEMBER 16, 2005

                                             **( X ) RELEASED**
                                             **(   ) WITHHELD**

     **TO:** CRIMINAL INVESTIGATIVE FILE

  **FROM:** DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| SIGNATURE BLOCK | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & SIGNATURES OF SPECIAL AGENTS |

**PAGE ITEMIZATION**

**PAGE NUMBER:**   82
**DOCUMENT TYPE:**   REPORT OF INVESTIGATION (DEA 6) PAGE 1 OF 2

**DATE:**   OCTOBER 17, 2000

                                        ( X ) **RELEASED**
                                        (   ) **WITHHELD**

       **TO:**   CRIMINAL INVESTIGATIVE FILE

    **FROM:**   DEA SPECIAL AGENT

**PURPOSE:**   FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCK 5,9, 12 & 14; BASIS OF INVESTIGATION, PARA 1; BOTTOM LEFT MARGIN | NAMES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & INITIALS OF SPECIAL AGENTS |
| BLOCK 6; BASIS OF INVESTIGATION; PARA 1, 2; TARGETS OF THIS INVESTIGATION: PARA 1 | THIRD-PARTY NAMES | (b)(7)(C) | NAMES OF INDIVIDUALS |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  83
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6) PAGE 2 OF 2

**DATE:**  October 17, 2000

**(   ) RELEASED**
**( X ) WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCK 3; INDEXING SECTION | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) | NAMES AND INFORMATION RELATED TO A THIRD-PARTY |
| INDEXING SECTION | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | NADDIS IDENTIFIER CODES |

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NELSON JOSE DEL ROSARIO,**      ) | |
|      ) | |
| **Plaintiff**      ) | |
|      ) | |
| **v.**      ) | |
|      ) | **Civil Action No. 08-0079 JDB** |
| **DRUG ENFORCEMENT ADMINISTRATION,** ) | |
| *et al.*      ) | |
| **Defendants**      ) | |
| _____ ) | |

## <u>ORDER</u>

This matter comes before the Court on Defendants' Motion for Summary Judgment.

Upon consideration of the Motion, Plaintiff's Opposition, Defendants' Reply, the relevant law,

and the entire record, it is hereby this _____ day of _____, 2008,

ORDERED that Defendants' Motion is hereby GRANTED, and it is further,

ORDERED that summary judgment be entered in favor of Defendants pursuant to Federal

Rule of Civil Procedure 56.  This is a final, appealable order.


_____
JOHN D. BATES
United States District Judge